# SUPREME COURT OF WISCONSIN

| | |
|---|---|
| CASE NO.: | 2020AP1742 |

| | |
|---|---|
| COMPLETE TITLE: | Tavern League of Wisconsin, Inc., Sawyer County Tavern League, Inc. and Flambeau Forest Inn LLC,<br>   Plaintiffs,<br>  v.<br>Andrea Palm and Wisconsin Department of Health Services,<br>   Defendants-Respondents-Petitioners,<br>Julia Lyons,<br>   Defendant-Respondent,<br>THE MIX UP, INC (D/B/A, MIKI JO'S MIX UP), Liz Sieben, Pro-Life Wisconsin Education Task Force, Inc., Pro-Life Wisconsin, Inc. and Dan Miller,<br>   Intervenors-Plaintiffs-Appellants. |

ON BYPASS FROM THE COURT OF APPEALS

| | |
|---|---|
| OPINION FILED: | April 14, 2021 |
| SUBMITTED ON BRIEFS: | |
| ORAL ARGUMENT: | December 17, 2020 |

| | |
|---|---|
| SOURCE OF APPEAL: | |
| COURT: | Circuit |
| COUNTY: | Sawyer |
| JUDGE: | James C. Babler |

JUSTICES:
ROGGENSACK, C.J., announced the mandate of the Court, and delivered an opinion, in which ZIEGLER and REBECCA GRASSL BRADLEY, JJ., joined. HAGEDORN, J., filed a concurring opinion. ANN WALSH BRADLEY, J., filed a dissenting opinion, in which DALLET and KAROFSKY, JJ., joined.
NOT PARTICIPATING:

ATTORNEYS:

For the defendants-respondents-petitioners, there were briefs filed by *Colin A. Hector, Hannah S. Jurss,* and *Thomas C. Bellavai*, assistant attorneys general; with whom on the brief was *Joshua L. Kaul*, attorney general. There was an oral argument by *Colin Hector*.

For the intervenors-plaintiffs-appellants, there were briefs filed by *Misha Tseytlin, Kevin M. LeRoy,* and *Troutman Pepper Hamilton Sanders LLP*, Chicago, Illinois. Also on the briefs were *Andrew M. Bath* and *Thomas More Society*, Chicago, Illinois; as well as *Erick Kaardal* and *Mohrman, Kaardal & Erickson, P.A.*, Minneapolis, Minnesota. There was an oral argument by *Misha Tseytlin*.

An amicus curiae brief was filed by *Lucas T. Vebber, Corydon J. Fish,* and *Wisconsin Manufacturers & Commerce, Inc.*

NOTICE

**This opinion is subject to further editing and modification. The final version will appear in the bound volume of the official reports.**

No. 2020AP1742
(L.C. No. 2020CV128)

STATE OF WISCONSIN        :        IN SUPREME COURT

**Tavern League of Wisconsin, Inc., Sawyer County Tavern League, Inc. and Flambeau Forest Inn LLC,**

       **Plaintiffs,**

       **v.**

**Andrea Palm and Wisconsin Department of Health Services,**

       **Defendants-Respondents-Petitioners,**

**Julia Lyons,**

       **Defendant-Respondent,**

**THE MIX UP, INC (D/B/A, MIKI JO'S MIX UP), Liz Sieben, Pro-Life Wisconsin Education Task Force, Inc., Pro-Life Wisconsin, Inc. and Dan Miller,**

       **Intervenors-Plaintiffs-Appellants.**

**FILED**

**APR 14, 2021**

Sheila T. Reiff
Clerk of Supreme Court

---

ROGGENSACK, C.J., announced the mandate of the Court, and delivered an opinion, in which ZIEGLER and REBECCA GRASSL BRADLEY, JJ., joined. HAGEDORN, J., filed a concurring opinion. ANN WALSH BRADLEY, J., filed a dissenting opinion, in which DALLET and KAROFSKY, JJ., joined.

---

REVIEW of a decision of the Court of Appeals. *Affirmed.*

¶1 PATIENCE DRAKE ROGGENSACK, C.J. The Department of Health Services (DHS) Secretary-designee, Andrea Palm, issued Emergency Order 3 on October 6, 2020, as a response to the COVID-19 pandemic. Emergency Order 3 limited the size of indoor public gatherings either to 25 percent of a facility's permitted capacity or, if no general capacity limit was prescribed, to 10 people.

¶2 We conclude that Emergency Order 3 meets the definition of a rule, as we recently explained in Wisconsin Legislature v. Palm, 2020 WI 42, 391 Wis. 2d 497, 942 N.W.2d 900. Therefore, Emergency Order 3 should have been promulgated according to rulemaking procedures set forth in Wis. Stat. ch. 227. Because it was not, Emergency Order 3 was not validly enacted and was unenforceable. Accordingly, we affirm the decision of the court of appeals.

## I. BACKGROUND

¶3 On October 6, 2020, as her second response to COVID-19 cases in Wisconsin, Palm issued Emergency Order 3. Emergency Order 3 limited the number of people who could be present at indoor, public gatherings.

¶4 A "public gathering" was defined as "an indoor event, convening, or collection of individuals, whether planned or spontaneous, that is open to the public and brings together people who are not part of the same household in a single room." Places open to the public were "[r]ooms within a business location, store, or facility that allow members of the public to enter" or "[t]icketed events where tickets are available for

2

free or for purchase by any individual or by any individual within a specific class of people." Finally, places not open to the public included "[o]ffice spaces, manufacturing plant[s], and other facilities that are accessible only by employees or other authorized personnel," "[i]nvitation-only events that exclude uninvited guests" and "[p]rivate residences. Except, a [private] residence is considered open to the public during an event that allows entrance to any individual; such public gatherings are limited to 10 people."

¶5 Emergency Order 3 stated in part:

2.   Public gatherings limited.

   a. Public gatherings are limited to no more than 25% of the total occupancy limits for the room or building, as established by the local municipality.

   b. For indoor spaces without an occupancy limit for the room or building that is established by the local municipality, such as a private residence, public gatherings are limited to no more than 10 people.

The order listed entities who were exempt from its public gathering limits: childcare settings, schools and universities, health care and human services operations, Tribal nations, governmental and public infrastructure operations (including food distributors), places of religious worship, political rallies, and other gatherings protected by the First Amendment. Emergency Order 3 was enforceable by civil forfeiture, and it was to be effective until November 6, 2020.[1]

---

[1] In her November 10, 2020 affidavit, Palm said that she had prepared Emergency Order 4, which similarly restricted public

¶6   One week after DHS issued Emergency Order 3, the Tavern League of Wisconsin, Inc., the Sawyer County Tavern League, Inc., and the Flambeau Forest Inn, LLC (collectively the "Tavern League plaintiffs") initiated this lawsuit in Sawyer County circuit court.  The Tavern League plaintiffs alleged that Emergency Order 3 was "a general order of general application . . . in other words, it is a rule."  The Tavern League plaintiffs further alleged that DHS did not undertake proper rulemaking procedures under ch. 227 and as required by our decision in Palm.  The Tavern League plaintiffs sought a declaration that Emergency Order 3 was unlawful and a temporary injunction barring its enforcement.

¶7   The circuit court, the Honorable John M. Yackel originally presiding, granted the Tavern League plaintiffs' motion for an ex parte temporary injunction.  Judge Yackel did not provide reasoning for his decision.  The Mix Up, Inc., Liz Sieben, Pro-Life Wisconsin Education Task Force, Inc., Pro-Life Wisconsin, Inc., and Dan Miller moved to intervene (the intervenors-plaintiffs collectively "The Mix Up") and moved for a temporary injunction.

¶8   The Tavern League plaintiffs and DHS each moved for judicial substitution pursuant to Wis. Stat. § 801.58(1) (2019-20).[2]  The circuit court, the Honorable James C. Babler now

gatherings.  She said that Emergency Order 4 would be issued immediately were we to reverse the court of appeals decision.

[2] All subsequent references to the Wisconsin Statutes are to the 2019-20 version unless otherwise indicated.

presiding, granted The Mix Up's motion to intervene but vacated Judge Yackel's ex parte order and denied The Mix Up's motion for temporary injunctive relief.

¶9   The circuit court held that neither the Tavern League plaintiffs nor the Mix Up had a reasonable probability of success on the merits, one factor courts consider in determining whether a movant is entitled to a temporary injunction.[3]   The circuit court reasoned that "this matter . . . [is] not as clear-cut as either side would like to make it."

¶10  The circuit court noted that in Palm, we did not address the school closure portion of Emergency Order 28.  See Palm, 391 Wis. 2d 497, ¶3 n.6 ("This decision does not apply to Section 4.a. of Emergency Order 28," which listed school closings).  DHS alleged that its authority to limit indoor public gatherings was based in the same statute, Wis. Stat. § 252.02(3), which lists schools as well as churches, and "other places" that the department may close.  The circuit court further held that enjoining Emergency Order 3 would disrupt the status quo and there was no proof that the plaintiffs were harmed by the order because they offered no proof that they were

---

[3] "A circuit court may issue a temporary injunction if: '(1) the movant is likely to suffer irreparable harm if a temporary injunction is not issued; (2) the movant has no other adequate remedy at law; (3) a temporary injunction is necessary to preserve the status quo; and (4) the movant has a reasonable probability of success on the merits.'"  Serv. Empl. Int'l Union, Local 1 v. Vos, 2020 WI 67, ¶93, 393 Wis. 2d 38, 946 N.W.2d 35 (quoting Milwaukee Deputy Sheriffs' Ass'n v. Milwaukee Cnty., 2016 WI App 56, ¶20, 370 Wis. 2d 644, 833 N.W.2d 154).

in compliance with it. Accordingly, the circuit court denied injunctive relief.

¶11 The Mix Up moved for leave to appeal the circuit court's decision. After the court of appeals granted The Mix Up's petition for leave to appeal, DHS petitioned for bypass. We denied that petition, and the case remained with the court of appeals.

¶12 The court of appeals summarily reversed the circuit court. Tavern League v. Palm, No. 2020AP1742, unpublished slip op. (Wis. Ct. App. Nov. 6, 2020). The court of appeals held that "under our supreme court's holding in Palm, Emergency Order #3 is invalid and unenforceable, as a matter of law." Id. at 3. It therefore held that The Mix Up had "a reasonable probability——in fact, an apparent certainty——of success on the merits" and was entitled to an injunction. DHS petitioned for review, which we granted. The question we determine on review is whether Emergency Order 3 is a rule. First, however, we determine whether to dismiss this appeal as moot.

## II. DISCUSSION

### A. Standard of Review

¶13 Whether an issue is moot is a question of law that we review independently. Portage Cnty. v. J.W.K., 2019 WI 54, ¶10 386 Wis. 2d 672, 927 N.W.2d 509. Additionally, whether Emergency Order 3 was a rule is a question of law that we review independently. Palm, 391 Wis. 2d 497, ¶14; see also Journal Times v. City of Racine Bd. of Police & Fire Comm'rs, 2015 WI 56, ¶42, 362 Wis. 2d 577, 866 N.W.2d 563 (noting that the

6

interpretation of our prior cases is a question of law reviewed independently).

## B. Mootness

¶14 The Mix Up urges us to dismiss the review that we granted to DHS because the issues are now moot. The Mix Up argues that, because Emergency Order 3 expired on November 6, 2020, there is not a live controversy.

¶15 "An issue is moot when its resolution will have no practical effect on the underlying controversy." J.W.K., 386 Wis. 2d 672, ¶11. Ordinarily, we refrain from deciding moot issues. Id., ¶12. However, we have exceptions to that general rule such as: "(1) the issues are of great public importance; (2) the constitutionality of a statute is involved; (3) the situation arises so often a definitive decision is essential to guide the trial courts; (4) the issue is likely to arise again and should be resolved by the court to avoid uncertainty; or (5) the issue is capable and likely of repetition and yet evades review." Id. (quoted sources and internal quotation marks omitted).

¶16 The Mix Up is correct that the issue in this case is moot; Emergency Order 3 expired on November 6, 2020. However, we conclude that this case satisfies several of our mootness exceptions set forth above, one of which we address below. We begin by noting that "[t]he dispute in this case involves whether the Secretary-designee of DHS issued an order in violation of the laws of Wisconsin." See Palm, 391 Wis. 2d 497, ¶11. Similar to Emergency Order 28, Emergency Order 3 impacts

7

every person in Wisconsin, in one way or another, and it is open to all who come into Wisconsin during its operation. It charts a course that the Secretary-designee will repeat with future orders.[4] Accordingly, it is important to confirm, once again, that Emergency Order 3 is beyond the power that the legislature delegated to the Secretary-designee. This satisfies the great public importance mootness exception. Accordingly, we decline to dismiss our review; instead, we turn to the merits.

### C.  Parameters of a Rule

¶17 Rulemaking "ensure[s] that . . . controlling, subjective judgment asserted by one unelected official" is not imposed by agencies through the abandonment of rulemaking procedures. Palm, 391 Wis. 2d 497, ¶28; NLRB v. Wyman-Gordon Co., 394 U.S. 759, 764 (1969) (explaining that rulemaking provisions in the law "assure fairness and mature consideration of rules of general application"). Accordingly, agencies must comport with rulemaking procedures set forth in ch. 227 when the agency's proffered directive meets the definition of a "rule."

¶18 Wisconsin Stat. § 227.10(1) is the initial focus of our review. It provides: "Each agency shall promulgate as a rule each statement of general policy and each interpretation of a statute which it specifically adopts to govern its enforcement or administration of that statute." In Palm, we were asked to interpret whether Emergency Order 28 met that statutory definition. We concluded that it did because Emergency Order 28

---

[4] See note 1 supra.

was "a general order of general application."  Palm, 391 Wis. 2d 497, ¶42.

¶19  We further explained that agency action that exhibits all of the following criteria meets the definition of a rule: "'(1) a regulation, standard, statement of policy or general order; (2) of general application; (3) having the effect of law; (4) issued by an agency; (5) to implement, interpret or make specific legislation enforced or administered by such agency.'"  Palm, 391 Wis. 2d 497, ¶22 (quoting Citizens for Sensible Zoning, Inc. v. DNR, 90 Wis. 2d 804, 814, 280 N.W.2d 702 (1979)); see also Wis. Stat. § 227.01(13) (defining "rule").

¶20  As we concluded in Palm, an order issued by an agency is a general order of general application if "the class of people regulated . . . 'is described in general terms and new members can be added to the class.'"  Palm, 391 Wis. 2d 497, ¶22 (quoting Citizens for Sensible Zoning, 90 Wis. 2d at 816).  The inquiry focuses on the class of people regulated by the agency, not on the factual context in which the agency action arose. Palm, 391 Wis. 2d 497, ¶23.  To that end, "to be of general application, a rule need not apply to all persons within the state" as long as the class to whom the rule applies is described in general terms and members can be added to the class.  See Citizens for Sensible Zoning, 90 Wis. 2d at 815-16. For example, in Palm, Emergency Order 28 was a rule because it "regulate[d] all persons in Wisconsin at the time it was issued and it regulate[d] all who [would] come into Wisconsin in the future."  Palm, 391 Wis. 2d 497, ¶24; see also Citizens for

9

Sensible Zoning, 90 Wis. 2d at 814 (concluding that a flood plain ordinance that was limited to certain portions of a certain county was nevertheless a rule because although the applicable class was limited, it was open and new members could be added).

¶21 Appellate courts have held that a general order of general application could "have the 'effect of law' where criminal or civil sanctions can result [from] a violation; where licensure can be denied; and where the interest of individuals in a class can be legally affected through enforcement of the agency action." Cholvin v. DHFS, 2008 WI App 127, ¶26, 313 Wis. 2d 749, 758 N.W.2d 118 (collecting cases). Palm, Citizens for Sensible Zoning and Cholvin illustrate the wide array of agency conduct that could affect an individual group member's legal interests.

¶22 In Palm, Emergency Order 28 provided that it was enforceable by criminal sanction; clearly, it had the effect of law. Palm, 391 Wis. 2d 497, ¶36. Similarly, in Citizens for Sensible Zoning, the rule had the effect of law because it was "'of the same effect as if adopted by the county.'" Citizens for Sensible Zoning, 90 Wis. 2d at 816 (quoting Wis. Stat. § 87.30 (1973-74)). Lastly, in Cholvin, the written instructions that the Department of Health and Family Services utilized had the effect of law because the instructions could be used to deny certain Medicaid benefits. Cholvin, 313 Wis. 2d 749, ¶29. These cases and those cited in Cholvin demonstrate that a myriad of different agency actions could affect one's

legal interests and that an action having the effect of law is not limited to criminal sanctions.

¶23  In order to constitute a rule, the directive must be that of an agency.  Palm, 391 Wis. 2d 497, ¶22.  Wisconsin Stat. § 227.01(1) defines an "[a]gency" as "a board, commission, committee, department or officer in the state government, except the governor, a district attorney or military or judicial officer."  Boards, commissions, committees and departments are defined generally in Wis. Stat. § 15.01 and other statutes define which entity meets those descriptions as relevant to that section or chapter.  See, e.g., Wis. Stat. § 250.01(2) (defining the "department" for purposes of chapters 250-257 as "the department of health services").  If a general order of general application is issued by one of these entities, it satisfies the fourth definitional criterion of a rule.

¶24  Finally, when a general order of general application implements, interprets or makes specific legislation or regulates how a statute will be administered or enforced moving forward that general order meets the fifth definitional criterion of a rule.[5]  See Citizens for Sensible Zoning, 90 Wis. 2d at 816 ("[T]he DNR issued the ordinance to implement

---

[5] To "implement" is to "carry out" or "accomplish" and "especially: to give practical effect to and ensure actual fulfillment by concrete measures."  Implement, Merriam-Webster Third Int'l Dictionary 1134 (1986).  See State ex rel. Kalal v. Circuit Court for Dane Cnty., 2004 WI 58, ¶54, 271 Wis. 2d 633, 681 N.W.2d 110 (utilizing the American Heritage Dictionary to glean the common meaning of the word "refuse").

sec. 87.30, which it administers."); see also Wisconsin Elec. Power Co. v. DNR, 93 Wis. 2d 222, 235, 287 N.W.2d 113 ("[T]he DNR issued the permits containing the chlorine limitations to implement sec. 147.02, Stats."). Similarly, emergency rules guide the administration and enforcement of a statute under an agency's purview when a threat to the "public peace, health, safety, or welfare necessitates" expediency. See Wis. Stat. § 227.24(1). Therefore, under most circumstances, when an agency action makes specific a statute for which the agency has rulemaking authority that action will satisfy the fifth criterion of a rule.

¶25 Furthermore, when an agency, in order to enforce or administer a statute in its purview, adopts its own understanding of that statute, it generally has interpreted the statute thereby satisfying the "interpret" criterion of rulemaking. See Wis. Stat. § 227.10(1); see also Frankenthal v. Wis. Real Est. Brokers' Bd., 3 Wis. 2d 249, 253, 89 N.W.2d 825 (1958) (concluding that "mimeographed instructions for renewal of real-estate broker's licenses" was a rule of the real estate brokers' board). In addition, where a statute's mandate is not clear and unambiguous, an agency will need to interpret the statute in order to take action permitted by the statute. See Lamar Cent. Outdoor Co., Inc. v. Div. of Hearings & Appeals, 2019 WI 109, ¶38, 389 Wis. 2d 486, 936 N.W.2d 573 (concluding that the statute at issue did not "plainly and unambiguously" compel the agency's interpretation of the statute and therefore

rulemaking was required). In such instances, the fifth definitional criterion of a rule is also satisfied.

### D. Emergency Order 3

¶26 Having set out the definitional criteria used to evaluate when an agency action constitutes a rule, we apply them to determine whether Emergency Order 3 is a rule. The court of appeals concluded that Emergency Order 3 was a rule because it was issued by DHS purportedly pursuant to its authority under Wis. Stat. § 252.02(3), it imposed statewide restrictions on public gatherings and it made subjective policy decisions regarding which entities were subject to its mandate and which entities were exempt. Because Emergency Order 3 was not promulgated as a rule the court of appeals concluded that it was invalid and unenforceable. We agree. On its face, Emergency Order 3 meets the definition of a rule and DHS was required to comply with rulemaking procedures in ch. 227.

¶27 However, despite our decision in Palm and the court of appeals' conclusion that this case fell squarely within Palm, DHS argues that Emergency Order 3 is not a rule under Palm's rubric. DHS contends that Emergency Order 3 was not a rule because it issued Emergency Order 3 under Wis. Stat. § 252.02(3)[6] rather than the more general statutory subsections discussed at length in Palm, namely §§ 252.02(4) and (6).[7] DHS supports its

---

[6] Wisconsin Stat. § 252.02(3) states that "The department may close schools and forbid public gatherings in schools, churches, and other places to control outbreaks and epidemics."

[7] In relevant part, Wis. Stat. § 252.02(4) states that "[T]he department may promulgate and enforce rules or issue

13

argument by noting that we did not discuss the scope of subsection (3) and that we upheld the school closure provision of Emergency Order 28, which was based on § 252.02(3). Additionally, DHS argues that § 252.02(3) "confer[s] well-delineated statutory power" and therefore does not require rulemaking to enforce.[8]

¶28 This argument reads Palm too narrowly and misses Palm's overarching holding. As a preliminary matter, we note that Palm did not bless DHS's order that closed schools. Palm simply said that its holding "[did] not apply to Section 4.a. of Emergency Order 28," which was limited to school closures. Palm, 391 Wis. 2d 497, ¶3 n.6. Palm was very specific in regard to the portion of Emergency Order 28 to which it did not apply. It employed a subsection of Emergency Order 28, not a subsection of Wis. Stat. § 252.02. It did not exempt all orders issued under § 252.02(3) from the definition of a rule. Stated otherwise, whether DHS issued Emergency Order 3 under a different statutory subsection than those Palm focused on is of

---

orders . . . for the control and suppression of communicable diseases . . . ." Similarly, subsection (6) provides that "The department may authorize and implement all emergency measures necessary to control communicable diseases." § 252.02(6).

[8] DHS also argues that rulemaking is not needed when an agency enforces or administers a statute that plainly authorizes the agency to act. According to DHS, rulemaking is necessary only when an agency "fills in the gaps" of a general statute with forward looking policy. This argument appears to be a reformulation of the fifth criterion of the rule definition set forth above and does not obviate the requirement that DHS proceed by rulemaking.

14

no import if DHS's action meets the definition of a rule. Accordingly, we examine Emergency Order 3 based on whether it satisfies the five definitional criteria of a rule, which were explained in detail in Palm.

¶29 Emergency Order 3 is a general order generally applied, and therefore, it meets the facial definition of a rule under Wis. Stat. § 227.01(13), explained further in Palm. We set out at length in Palm that when a general order of general application satisfies the five rule definitional criteria, it is a rule for purposes of ch. 227. We now review those criteria in light of Emergency Order 3.

¶30 First, and as with Emergency Order 28, Emergency Order 3 is a general order of general application satisfying the first and second definitional criteria of a rule. An agency action is a general order of general application if the class to whom it applies is described in general terms and new members can be added to the class. See Palm, 391 Wis. 2d 497, ¶¶22-24. By its own terms, Emergency Order 3 defined a public gathering broadly as any "indoor event, convening, or collection of individuals, whether planned or spontaneous, that is open to the public and brings together people who are not part of the same household in a single room." "[O]pen to the public" is defined just as expansively and "include[d], but [was] not limited to: . . . [r]ooms within a business location, store, or facility that allow members of the public to enter." Public gathering also includes "[t]icketed events" where persons could obtain tickets for free or purchase tickets. This broad and general

15

description of the class to whom Emergency Order 3 applied regulated a vast array of entities and people.

¶31 In addition to describing the class to which Emergency Order 3 applied in general terms, the class it created was an open class. New entities and new members could be added for public gatherings. Just as people who were not regulated by Emergency Order 28 one day "could have been regulated the next" if they moved into Wisconsin, new entities could have opened during Emergency Order 3 and new persons could have come into Wisconsin. If they met the order's broad requirements, all attendance for all people would have been regulated. See Palm, 391 Wis. 2d 497, ¶24; see also Citizens for Sensible Zoning, 90 Wis. 2d at 815.[9]

¶32 In regard to the third definitional criterion, Emergency Order 3 had the effect of law. Section 6 of Emergency Order 3 stated that the "order [was] enforceable by civil forfeiture." Similar to Palm, DHS cited Wis. Stat. § 252.25 as the statutory basis for its imposition of civil forfeitures on those who would violate Emergency Order 3. See Palm, 391 Wis. 2d 497, ¶¶36-40. As Cholvin made clear, agency action that can be enforced by civil forfeiture has the effect of law.

---

[9] It is true that Emergency Order 3 contained certain enumerated exceptions to its definitions. However, the exceptions did not make the class description less general nor did the exceptions close the class in any way. See Citizens for Sensible Zoning, Inc. v. DNR, 90 Wis. 2d 804, 814, 280 N.W.2d 702 (1979) (noting that the class was limited to persons who had a legal interest in the land regulated by the ordinance but that new people could enter that narrow class).

Additionally, Emergency Order 3 was issued by DHS, which satisfies the fourth definitional criterion of being "issued by an agency."

¶33 Finally, Emergency Order 3 both implemented and interpreted Wis. Stat. § 252.02(3)'s grant of authority to "forbid public gatherings . . . to control outbreaks and epidemics" thereby satisfying the fifth definitional criterion.[10] To implement is to carry out, and without some sort of implementing mechanism, the "forbid public gatherings" portion of § 252.02(3) would not be carried out. Moreover, by way of its implementation, DHS interpreted the statute. First, "public gatherings" is not defined in the surrounding statutes and therefore, DHS must have interpreted § 252.02(3) to come to its definition. Moreover, DHS interpreted what it means to "forbid public gatherings." Its interpretation is that "forbid" means to "limit" numerically. Whether this interpretation is legally correct is not relevant because it is nonetheless DHS's interpretation. See Lamar Central, 389 Wis. 2d 486, ¶29 n.16. By both implementing and interpreting § 252.02(3)'s grant of authority, DHS satisfied the fifth definitional criterion of a rule. Accordingly, Emergency Order 3 satisfied all five

---

[10] We note that DHS's indication that it would continue to issue similar orders depending on the outcome of this case poses the question of whether the expiration date of Emergency Order 3 was a date certain. See Wisconsin Legislature v. Palm, 2020 WI 42, 391 Wis. 2d 497, ¶27, 942 N.W.2d 900 (rejecting the argument that Emergency Order 28 was a time limited order because the "Gating Criteria" of Emergency Order 31 extended the effect of Emergency Order 28 beyond its purported expiration).

17

criteria that define a rule and, because it was not promulgated through rulemaking procedures, it was not valid or enforceable.

### III. CONCLUSION

¶34 We conclude that Emergency Order 3 meets the definition of a rule, as we recently explained in Palm, 391 Wis. 2d 497. Therefore, Emergency Order 3 should have been promulgated according to rulemaking procedures set forth in Wis. Stat. ch. 227. Because it was not, Emergency Order 3 was not validly enacted and was unenforceable. Accordingly, we affirm the decision of the court of appeals.[11]

*By the Court.*—The decision of the court of appeals is affirmed.

---

[11] This case presents as the review of the grant of a temporary restraining order by the court of appeals in an interlocutory appeal. We do not address temporary restraining order standards because our decision herein is a declaration that permanently enjoins Executive Order 3, a rule made without engaging in rulemaking.

¶35 BRIAN HAGEDORN, J. *(concurring).* Last term, this court struck down an order issued by Department of Health Services Secretary-designee Andrea Palm that purported, in part, to close or limit capacity at various public places throughout Wisconsin. Wisconsin Legislature v. Palm, 2020 WI 42, 391 Wis. 2d 497, 942 N.W.2d 900. We held, among other things, that a statewide order limiting public gatherings met the statutory definition of an administrative rule and must be promulgated as such. Id., ¶¶3, 7, 42, 58.

¶36 Some details have changed, but this case arises because Palm issued another order doing exactly what this court said she may not do: limit public gatherings by statewide order without promulgating a rule. Palm hopes to achieve a different outcome this time by seizing on some of the vulnerabilities in last term's decision. To be sure, the court's rationale in Palm was, in some respects, incomplete. My objections to the court's legal analysis were no secret. See id., ¶¶165-263 (Hagedorn, J., dissenting). But creative efforts to engineer a different result from an indistinguishable set of facts would, in my view, be a departure from basic principles of judicial decision-making.

¶37 The reach and nature of stare decisis——a Latin phrase that means "to stand by things decided"——is the subject of much debate.[1] But if stare decisis is to have any import at all in our legal system, it surely must apply when a court has told a

---

[1] Stare decisis, Black's Law Dictionary 1696 (11th ed. 2019).

specific party that certain conduct is unlawful, and that party does the very same thing again under the same circumstances. That is what we have here. No further clarification of our opinion in Palm is needed; its application is plain. We held that Palm's statewide order limiting public gatherings (along with a number of other restrictions) meets the statutory definition of a rule, and must be promulgated as a rule to have legal effect. Respect for this court and its authority compels me to stand by that decision today.

¶38 Under different circumstances, we may need to reconsider some of our conclusions in Palm. However, we have not been asked to reexamine Palm here, nor is doing so necessary to decide this case. For these reasons, while I cannot join the Chief Justice's opinion further extending the reasoning of Palm, I respectfully concur in the court's mandate.

2

¶39 ANN WALSH BRADLEY, J.   *(dissenting).*   At a time when public health experts are imploring pandemic-weary Wisconsinites to stay vigilant, a faulty statutory analysis once again leads this court to undermine public health measures.

¶40 This time, the statute at issue is Wis. Stat. § 252.02(3), which states that the Department of Health Services (DHS) has the authority to "close schools and forbid public gatherings in schools, churches, and other places to control outbreaks and epidemics."   The court attempts to justify its result by relying on stare decisis and statutory interpretation, but both rationales fall flat.

¶41 Stare decisis simply does not apply.   The Palm[1] decision, on which the mandate of this court hinges, did not decide the question now before us and did not even attempt to interpret § 252.02(3).   With no analysis, there is no decision for us to follow.   And even if Palm constituted precedent for interpretation of this statute, it falls within the well-recognized exceptions to according precedential adherence——the Palm decision is both unsound in principle and unworkable in practice.

¶42 The lead opinion's[2] statutory interpretation fares no better.   Trying to get around the plain language of the statute,

---

[1] Wisconsin Legislature v. Palm, 2020 WI 42, 391 Wis. 2d 497, 942 N.W.2d 900.

[2] I refer to Chief Justice Roggensack's opinion as the "lead opinion" because the opinion has not been joined by a majority of the court.   Although Justice Hagedorn concurs in the mandate, he does not join the lead opinion's reasoning.   See Justice Hagedorn's concurrence, ¶38.

it engages in a hocus-pocus interpretation and the plain meaning of the statute somehow seems to vanish. In its place there appears an interpretation of the statute, which according to the lead opinion, means the opposite of what it says. In place of the plain language of the statute that gives DHS the authority to forbid public gatherings, the lead opinion interprets the statute as not giving DHS that authority. Instead, it contrives a roadblock that is not part of the statute, and forces DHS to go through a cumbersome rulemaking procedure.

¶43 Contrary to the lead opinion, I conclude that the plain language of Wis. Stat. § 252.02(3) provides DHS with the authority to forbid public gatherings without going through rulemaking. Contrary to the concurrence, I further conclude that Palm does not require otherwise.

¶44 Accordingly, I respectfully dissent.

I

¶45 As has been well established at this point, we are in the midst of a worldwide pandemic, the likes of which few have

---

The only reference to "lead opinions" in our Internal Operating Procedures states that if during the process of circulating and revising opinions, "the opinion originally circulated as the majority opinion does not garner the vote of a majority of the court, it shall be referred to in separate writings as the 'lead opinion' unless a separate writing garners the vote of a majority of the court." Wis. S. Ct. IOP III.G.4 (Sept. 12, 2019).

Lest the public mistakenly believe that a lead opinion constitutes precedential authority, it does not. For further discussion of our procedure regarding lead opinions, see Koss Corp. v. Park Bank, 2019 WI 7, ¶76 n.1, 385 Wis. 2d 261, 922 N.W.2d 20 (Ann Walsh Bradley, J., concurring).

2

ever seen. In response, both state and local governments have issued various public health orders in an attempt to curb the spread of COVID-19.

¶46 At issue in this case is Emergency Order 3, an order issued by DHS Secretary-Designee Andrea Palm. As set forth by the lead opinion, this order was issued on October 6, 2020, and "limited the number of people who could be present at indoor, public gatherings." Lead op., ¶3.

¶47 What the lead opinion does not mention is the conditions that led to the issuance of Emergency Order 3. The Order details how "Wisconsin is now a COVID-19 hotspot[,]" home to "rapidly accelerat[ing]" spread and a strain on hospital capacity. It declares:

> Wisconsin must use all its tools, including keeping people physically apart and wearing face coverings, to slow this dangerous spike. The consequences of failing to act could be devastating and deadly. Because of the time period between infection, diagnosis, and the development of serious symptoms, hospitalizations and deaths lag behind case counts. Wisconsin is now experiencing increases in both of these serious indicators because of the steep rise in cases of COVID-19 over the past month.

¶48 Accordingly, Emergency Order 3 limits public gatherings in two ways. First, "[p]ublic gatherings are limited to no more than 25% of the total occupancy limits for the room or building, as established by the local municipality." Second, "[f]or indoor spaces without an occupancy limit for the room or building that is established by the local municipality, such as a private residence, public gatherings are limited to no more than 10 people."

3

¶49 A "public gathering" for purposes of this order is defined as "an indoor event, convening, or collection of individuals, whether planned or spontaneous, that is open to the public and brings together people who are not part of the same household in a single room." The order specifies that places that are open to the public include, but are not limited to: (1) "Rooms within a business location, store, or facility that allow members of the public to enter"; and (2) "Ticketed events where tickets are available for free or for purchase by any individual or by any individual within a specific class of people."

¶50 For contrast, the order also identifies places that are not open to the public, and as a result are not included within the definition of a public gathering and thus are not subject to the order's limitations. These include: (1) "Office spaces, manufacturing plant[s], and other facilities that are accessible only by employees or other authorized personnel"; (2) "Invitation-only events that exclude uninvited guests"; and (3) "Private residences. Except, a residence is considered open to the public during an event that allows entrance to any individual; such public gatherings are limited to 10 people."

¶51 The Tavern League and others filed suit, seeking an injunction against the enforcement of Emergency Order 3 on the basis that the order constitutes an unpromulgated rule impermissible under Wis. Stat. ch. 227 and Wisconsin Legislature v. Palm, 2020 WI 42, 391 Wis. 2d 497, 942 N.W.2d 900. The Mix Up and others later intervened.

4

¶52 After the circuit court initially granted an ex parte temporary injunction, a later assigned[3] circuit court judge subsequently vacated that injunction and denied The Mix Up's motion for a temporary injunction. Lead op., ¶¶7-8. The circuit court reasoned that "it is not clear that plaintiffs have a reasonable probability of success on the merits, especially when I look at Footnote 21" of Palm.

¶53 Additionally, the circuit court determined "that there's no showing that a temporary injunction is necessary to preserve the status quo. There is nothing in the affidavits to show that any of the plaintiffs have complied with the order; that complying with the order has somehow harmed them." Finally, the circuit court concluded:

> [T]here's no showing of irreparable harm. If I had a showing for the last 40 days that businesses were going out because they were complying with the order, that would be a showing of irreparable harm. I merely have the theoretical issue that if they were to comply, they would suffer harm.

¶54 The Mix Up appealed, and the court of appeals reversed. Over Judge Stark's dissent, a majority of the court of appeals concluded that "under our supreme court's holding in Palm, Emergency Order #3 is invalid and unenforceable, as a matter of law." Tavern League of Wis., Inc. v. Palm, No. 2020AP1742, unpublished slip op. at 3 (Wis. Ct. App. Nov. 6, 2020).

¶55 This court's mandate now affirms the court of appeals, with the lead opinion determining that the plain language of the

---

[3] See Wis. Stat. § 801.58(1).

5

statute does not control and that "Emergency Order 3 meets the definition of a rule" as explained in last year's Palm decision. Lead op., ¶2. Thus, in the lead opinion's view, "Emergency Order 3 should have been promulgated according to rulemaking procedures set forth in Wis. Stat. ch. 227. Because it was not, Emergency Order 3 was not validly enacted and was unenforceable." Id.

¶56 Justice Hagedorn's concurrence arrives at the same destination, but takes a different route. It does not join the lead opinion, but instead concludes that the Palm court decided the issue we consider today and that the doctrine of stare decisis dictates that the court of appeals be affirmed. Justice Hagedorn's concurrence, ¶¶37-38.

II

¶57 I begin with a discussion of stare decisis because this court's mandate rests upon the application of that principle. Although not subscribing to the lead opinion's statutory analysis, Justice Hagedorn's concurrence would affirm the court of appeals, but only on the basis of stare decisis. Justice Hagedorn's concurrence, ¶37. However, a close examination of Palm reveals that the doctrine is inapplicable in this case.

¶58 Stare decisis refers to the principle that requires courts to "stand by things decided." State v. Harrell, 199 Wis. 2d 654, 667, 546 N.W.2d 115 (1996) (Abrahamson, J., concurring). The doctrine is fundamental to the rule of law.

6

Johnson Controls, Inc. v. Emp.'s Ins. of Wausau, 2003 WI 108, ¶94, 264 Wis. 2d 60, 665 N.W.2d 257.

¶59 But for stare decisis to dictate the outcome of the present case, the previous case relied upon must have actually decided the issue we now examine. Palm did not do so.

¶60 In Palm, a majority of the court struck down the DHS secretary-designee's initial "safer at home" order (Order #28) on the basis that the order was a rule that should have gone through rulemaking procedures. Palm, 391 Wis. 2d 497, ¶3. Secretary-designee Palm claimed that authority to issue Order #28 could be found in Wis. Stat. § 252.02(3), (4) and (6).[4]

---

[4] These subsections of Wis. Stat. § 252.02 provide in full:

> (3) The department may close schools and forbid public gatherings in schools, churches, and other places to control outbreaks and epidemics.

> (4) Except as provided in ss. 93.07(24)(e) and 97.59, the department may promulgate and enforce rules or issue orders for guarding against the introduction of any communicable disease into the state, for the control and suppression of communicable diseases, for the quarantine and disinfection of persons, localities and things infected or suspected of being infected by a communicable disease and for the sanitary care of jails, state prisons, mental health institutions, schools, and public buildings and connected premises. Any rule or order may be made applicable to the whole or any specified part of the state, or to any vessel or other conveyance. The department may issue orders for any city, village or county by service upon the local health officer. Rules that are promulgated and orders that are issued under this subsection supersede conflicting or less stringent local regulations, orders or ordinances.

> . . .

7

¶61 The majority in Palm stated we "do not define the precise scope of DHS authority under Wis. Stat. § 252.02(3), (4), and (6) because clearly Order 28 went too far." Id., ¶55. It did, however, explicitly reject Palm's reliance on subsections (4) and (6). With regard to subsec. (4), the majority determined:

> Order 28 goes far beyond what is authorized in Wis. Stat. § 252.02(4). For example, Order 28 exceeds the § 252.02(4) authority to quarantine those infected or suspected of being infected. Instead, Palm quarantines '[a]ll individuals present within the State of Wisconsin' by ordering them 'to stay at home or at their place of residence' with exceptions she deems appropriate.

Id., ¶49. Similarly, the majority did not accept Palm's argument that Order #28 was authorized by subsec. (6), observing the subsection's non-specific nature and concluding: "If Wis. Stat. § 252.02(6) were the sole factual foundation for criminal charges, no criminal prosecution could result because § 252.02(6) does not have the specificity required for fair notice of the conduct required or prohibited. Stated otherwise, it has no definable standards for required or prohibited conduct." Id., ¶47.

¶62 The Palm majority opinion did not contain any analysis whatsoever of Wis. Stat. § 252.02(3), which is the statute at issue here. However, it left two clues hidden in footnotes that inform our understanding of that subsection. The two clues are actually the same clue, as the Palm majority twice repeated the

___

(6) The department may authorize and implement all emergency measures necessary to control communicable diseases.

8

following delineated exception to its holding: "This decision does not apply to Section 4. a. of Emergency Order 28." Id., ¶¶3 n.6, 58 n.21.

¶63 So what is section 4.a. of Emergency Order 28, which the Palm majority left in place? This provision closed all public and private K-12 schools for the remainder of the 2019-2020 school year.[5] The question then arises, why was this section of Order #28 spared from the Palm majority's sword, while the rest of the order was slashed?

¶64 The Palm majority provides no explanation for the exception set forth in footnotes 6 and 21, but a look to Wis. Stat. § 252.02(3) provides a probable rationale. That subsection states: "The department may close schools and forbid public gatherings in schools, churches, and other places to control outbreaks and epidemics." The plain language of the statute provides that DHS may issue orders closing schools. Full stop. No interpretation is necessary, and thus no rulemaking is necessary for DHS to close schools. The Palm majority implicitly recognized this by the inclusion of footnotes 6 and 21.

---

[5] In full, section 4.a. of Order #28 provides:

Public and private K-12 schools shall remain closed for pupil instruction and extracurricular activities for the remainder of the 2019-2020 school year. Schools may continue to facilitate distance learning or virtual learning. Schools may continue to be used for Essential Government Functions and food distribution. This section does not apply to facilities operated by the Wisconsin Department of Corrections.

9

¶65 The lead opinion attempts to explain footnotes 6 and 21 in Palm, but its feeble "explanation" really doesn't say anything. See lead op., ¶28. It states: "Palm was very specific in regard to the portion of Emergency Order 28 to which it did not apply. It employed a subsection of Emergency Order 28, not a subsection of Wis. Stat. § 252.02. It did not exempt all orders issued under § 252.02(3) from the definition of a rule." Id. But this non-explanation has no explanatory power at all——it doesn't even attempt to explain why Palm carved out the exception for closing schools, which is essential to the determination of this case.

¶66 Far from deciding that the subject order would be impermissible under § 252.02(3), Palm contained no analysis at all of that subsection, and even hints that no rulemaking is necessary to implement its clear provisions. The phrase in subsec. (3) at issue here, "forbid public gatherings in . . . other places," is similarly clear.[6] See infra, ¶¶77-79.

¶67 In order for stare decisis to apply, the "thing" at issue must have actually been decided. Palm did not decide anything with regard to § 252.02(3). Where there is no analysis at all, what precedent was created for us to follow? I therefore determine that stare decisis does not dictate the result of this case.

---

[6] See Palm, 391 Wis. 2d 497, ¶232 n.19 (Hagedorn, J., dissenting) ("To the extent section 4.a. should be treated differently due to the explicit authority granted to DHS to close schools in Wis. Stat. § 252.02(3), that same logic would seem to apply to the other provisions in Order 28 that have the same statutory support.").

10

III

¶68 Even assuming that Palm decided the issue now before the court (it did not), stare decisis still would not dictate the result because last term's Palm decision is unsound in principle and unworkable in practice. In considering whether to overturn a prior case, we consider "whether the prior decision is unsound in principle, whether it is unworkable in practice, and whether reliance interests are implicated." Johnson Controls, Inc., 264 Wis. 2d 60, ¶99.

¶69 Palm is unsound in principle. It engages in a flawed statutory interpretation that sweeps with a broad brush where nuance is required. As Justice Hagedorn's dissent in Palm recognized, the decision "is not grounded in the law." Palm, 391 Wis. 2d 497, ¶259 (Hagedorn, J., dissenting). It twisted the language of Wis. Stat. § 252.02 and completely ignored the long-standing, broad powers the Legislature granted to DHS. Id., ¶132 (Dallet, J., dissenting). Similarly, its conclusions regarding § 252.02 are advisory and undeveloped, and undermine DHS's ability to apply and enforce the statute in accordance with the authority it has been given. Id., ¶160 (Dallet, J., dissenting), ¶232 (Hagedorn, J., dissenting).[7]

---

[7] Further underscoring that Palm is unsound in principle is its potential impact on scores of statutes and prior cases. The Palm decision largely rests on a premise not briefed or argued by any party, namely the proposition that "an executive branch order may only carry criminal penalties for any violation if the elements of a crime are first promulgated as a rule or otherwise defined in the statutes." Id., ¶253 (Hagedorn, J., dissenting).

11

¶70 Further, the Palm majority opinion is unsound in principle because it "morphs [rulemaking] into subjecting executive branch enforcement of enacted laws to a legislative veto," a conclusion "that turns our constitutional structure on its very head." Id., ¶218 (Hagedorn, dissenting). And for what? To "do[] the Legislature's bidding in the midst of a pandemic" and in so doing allow the Legislature "to avoid political fallout." Id., ¶162 (Dallet, J., dissenting).

¶71 It is also unworkable in practice. The rulemaking process mandated by Palm is overly cumbersome in the event of a fast-moving emergency. By design, the process includes repeated checks, public input, and imposed waiting periods. Id., ¶228 (Hagedorn, J., dissenting). Even if an emergency rule in a best case scenario could transpire in 12 days, as suggested by the Legislature during oral argument in Palm, "[t]welve days is far too long in a real emergency. Epidemics don't always give you a two-week heads up on their next move." Id., ¶230 (Hagedorn, J., dissenting). The emergency rules process is thus a poor fit for a fluid situation requiring a real-time and flexible response.

---

This "dramatic holding" could call into question a lengthy list of laws. Id., ¶255 (Hagedorn, J., dissenting). Indeed, "[o]ur statutes include numerous instances where violating an agency's order can result in criminal penalties." Id. "If an enactment of this sort is unlawful, then all of these statutes would presumably be unconstitutional. The same may be true for analogous statutes authorizing civil penalties." Id. Beyond the plethora of statutes, Palm portends to overrule "our cases [that] have long supported the notion that, at least in concept, criminal penalties for violating a lawful order are permissible." Id., ¶258 n.24 (Hagedorn, J., dissenting). The Palm majority's rationale would thus require a different result in an untold number of cases. Id.

12

¶72 It makes no sense to cling to Palm in the name of stare decisis when it is unsound in principle and unworkable in practice. Such "precedent" destabilizes rather than advances the rule of law. We are therefore not required to adhere to decisions that are objectively wrong. See Progressive N. Ins. Co. v. Romanshek, 2005 WI 67, ¶45, 281 Wis. 2d 300, 697 N.W.2d 417; Wenke v. Gehl Co., 2004 WI 103, ¶21, 274 Wis. 2d 220, 682 N.W.2d 405. Accordingly, I would decide this case based on the clear statutory text of Wis. Stat. § 252.02(3), to which I turn next.

IV

¶73 Agencies have the authority to promulgate rules, but they need not promulgate a rule to accomplish every task. See Wis. Stat. § 227.11(2)(a) ("Each agency may promulgate rules interpreting the provisions of any statute enforced or administered by the agency, if the agency considers it necessary to effectuate the purpose of the statute . . . .") (emphasis added).

¶74 As defined by statute, a "rule" is "a regulation, standard, statement of policy, or general order of general application that has the force of law and that is issued by an agency to implement, interpret, or make specific legislation enforced or administered by the agency or to govern the organization or procedure of the agency." Wis. Stat. § 227.01(13). When an agency acts within those powers that are expressly conferred by statute, the agency simply "effectuates

13

the will of the legislature." Brown Cnty. v. DHSS, 103 Wis. 2d 37, 43, 307 N.W.2d 247 (1981).

¶75 Thus, if a statute is unambiguous, i.e. if no interpretation is necessary to effectuate the purpose of the statute, then no rulemaking is required. See Schoolway Transp. Co. v. Div. of Motor Vehicles, DOT, 72 Wis. 2d 223, 235-36, 240 N.W.2d 403 (1976); Lamar Cent. Outdoor, LLC v. Div. of Hearings & Appeals, 2019 WI 109, ¶24, 389 Wis. 2d 486, 936 N.W.2d 573. The duty of the agency is to "administer the statute according to its plain terms." Schoolway Transp. Co., 72 Wis. 2d at 236.

¶76 The lead opinion, however, does not engage with the unambiguous language of Wis. Stat. § 252.02(3). It acknowledges that "where a statute's mandate is not clear and unambiguous, an agency will need to interpret the statute in order to take action permitted by the statute," lead op., ¶25, but it does not cite the converse: that where a statute is clear and unambiguous, no rulemaking is required. The logical starting point is an analysis of the plain language of § 252.02(3) to determine if there is ambiguity, but the lead opinion simply doesn't do that analysis.

¶77 Wisconsin Stat. § 252.02(3) provides that DHS may "forbid public gatherings in schools, churches, and other places to control outbreaks and epidemics." As relevant here, the plain language allows DHS to forbid "public gatherings" in "other places" that are not schools or churches. Emergency Order 3 forbids "public gatherings" in "other places" that are not schools or churches. The plain language of the statute is

14

unambiguous. By issuing Emergency Order 3, DHS is simply executing the clear words of the statute. No interpretation necessary.

¶78 The lead opinion attempts to set out how DHS "interpreted" § 252.02(3) in Emergency Order 3, making Order 3 a rule. See lead op., ¶33. In the lead opinion's view, DHS "interpreted" the term "public gathering" because it is not defined in the statute, and it "interpreted" "forbid" to mean "'limit' numerically." Id. But how are these "interpretations" any different from following the plain language of the statute? Although Emergency Order 3 provides a definition of "public gathering," that definition does not deviate from the common and ordinary meaning of the term. Similarly, "forbid" has a common and ordinary meaning. DHS just applied those common and ordinary meanings, no interpretation necessary.

¶79 Because no interpretation is necessary, no rulemaking is necessary. Accordingly, I determine that Emergency Order 3 is not a rule. It is authorized by the plain language of § 252.02(3) and DHS need not go through the cumbersome rulemaking process to do what the statute plainly allows.

¶80 For the foregoing reasons, I respectfully dissent.

¶81 I am authorized to state that Justice REBECCA FRANK DALLET and Justice JILL J. KAROFSKY join this dissent.

15