# SUPREME COURT OF WISCONSIN

| | |
|---|---|
| CASE NO.: | 2021AP1321-LV & 2021AP1325 |

| | |
|---|---|
| COMPLETE TITLE: | County of Dane, County of Iowa, Town of Wyoming and Village of Montfort,<br>      Petitioners-Respondents,<br>  v.<br>Public Service Commission of Wisconsin,<br>      Respondent-Respondent,<br>Driftless Area Land Conservancy, Wisconsin Wildlife Federation, Chris Klopp, LeRoy Belken, Gloria Belken, S.O.U.L. of Wisconsin, Clean Energy Organizations, Dairyland Power Cooperation, I.T.C. Midwest, LLC, American Transmission Company, Midcontinent Independent System Operator, Inc. and WEC Energy Group Wisconsin,<br>      Intervenors-Respondents,<br>Michael Huebsch,<br>      Other Party-Petitioner-Petitioner.<br><br>County of Dane, Iowa County, Town of Wyoming and Village of Montfort,<br>      Petitioners-Respondents,<br>  v.<br>Public Service Commission of Wisconsin,<br>      Respondent-Respondent-Respondent,<br>Driftless Area Land Conservancy,<br>      Intervenor-Petitioner-Respondent,<br>Wisconsin Wildlife Federation, Chris Klopp, LeRoy Belken, Gloria Belken, S.O.U.L. Wisconsin, Clean Energy Organizations, Dairyland Power Cooperative, ITC Midwest LLC, American Transmission Company, LLC, Midcontinent Independent System Operator, Inc., ATC, LLC and WEC Energy Group, Inc.,<br>      Intervenors-Respondents,<br>Michael Huebsch,<br>      Other Party-Appellant-Petitioner,<br>Robert M. Garvin,<br>      Other Party. |

| | |
|---|---|
| OPINION FILED: | July 7, 2022 |
| SUBMITTED ON BRIEFS: | |
| ORAL ARGUMENT: | February 28, 2022 |

| | |
|---|---|
| SOURCE OF APPEAL: | |
| COURT: | Circuit |
| COUNTY: | Dane |
| JUDGE: | Jacob B. frost |

JUSTICES:

ROGGENSACK, J., delivered the majority opinion of the Court with respect to ¶4, in which ZIEGLER, C.J., REBECCA GRASSL BRADLEY, and HAGEDORN, JJ., joined, and an opinion, in which ZIEGLER, C.J., REBECCA GRASSL BRADLEY, JJ., joined. HAGEDORN, J., filed a concurring opinion. KAROFSKY, J., filed a dissenting opinion, in which ANN WALSH BRADLEY and DALLET, JJ., joined.

NOT PARTICIPATING:

ATTORNEYS:

For the other party-petitioner-petitioner in 2021AP1321-LV and other party-appellant-petitioner in 2021AP1325, there were briefs by *Ryan J. Walsh, John K. Adams, John D. Tripoli* and *Eimer Stahl LLP*, Madison. There was an oral argument by *Ryan J. Walsh*.

For the intervenor-respondent Clean Energy Organizations, there was a brief filed by *Amelia Vohs, Sean Brady, Kevin M. St. John, John N. Giftos, Roisin H. Bell* and *Minnesota Center for Environmental Advocacy,* Saint Paul, *Clean Grid Alliance*, Saint Paul, and *Bell Giftos St. John LLC*, Madison. There was an oral argument by *Barret Van Sicklen*.

For the petitioners-respondents County of Dane, Iowa County, Town of Wyoming and Village of Montfort, intervenor respondent in 2021AP1321-LV and intervenor-petitioner-respondent in 2021AP1325, Driftless Area Land Conservancy, and for the

intervenors-respondents, Wisconsin Wildlife Federation, S.O.U.L. of Wisconsin, Gloria Belken, and Chris Klopp, there was a brief filed by *Catherine E. White, Howard A. Learner, Bradley D. Klein, Ann Jaworski* and *Hurley Burish S.C.*, Madison, and *Environmental Law & Policy Center,* Chicago. For the intervenors-respondents, there was an oral argument by *Barret Van Sicklen*.

For intervenor-respondent, Midcontinent Independent System Operator, there was a brief filed by *Jeffrey L. Small, Warren J. Day, Amanda James* and *Midcontinent Independent System Operator, Inc.,* Carmel, *Law Office of Warren J. Day*, Oregon, and *Sullivan & Ward, P.C.,* West Des Moines. There was an oral argument by *Barret Van Sicklen*.

For intervenors-respondents, American Transmmission Company, Dairlyand Power Cooperative, and ITC Midwest, there was a brief filed by *Brian H. Potts, Valerie T. Herring, Justin W. Chasco*, and *Perkins Coie LLP,* Madison, *Taft Stettinius & Hollister*, Minneapolis, and *Wheeler, Van Sickle & Anderson, S.C.,* Madison. There was an oral argument by *Barret Van Sicklen*.

For the respondent-respondent in 2021AP1321-LV and the respondent-respondent-respondent in 2021AP1325, there was a brief filed by *Cynthia E. Smith, Zachary Peters, Christiane A.R. Whiting* and *Public Service Commission of Wisconsin*, Madison. There was an oral argument by *Christiane A.R. Whiting*.

An amicus curiae brief was filed by *Evan Feinauer* and *Katie Nekola* for Clean Wisconsin, Inc.

An amicus curiae brief was filed by *Matthew M. Fernholz* and *Cramer, Multhauf & Hammes, LLP,* Waukesha, for Wisconsin Manufacturers and Commerce.

3

An amicus curiae brief was filed by *Benjamin B. Sloan, Matthew M. Fernholz,* and *Organization of MISO States,* Madison, and *Cramer, Multhauf & Hammes, LLP*, Waukesha, for Organization of MISO States, Inc.

An amicus curiae brief was filed by *Robert S. Driscoll* and *Reinhart Boerner Van Deuren S.C.*, Milwaukee, for *American Clean Power Association*.

An amicus curiae brief was filed by *Scott E. Rosenow* and *WMC Litigation Center*, Madison, for Wisconsin Manufacturers and Commerce, Inc., Wisconsin Utilities Association, Inc., and Edison Electric Institute.

An amicus curiae brief was filed by *James Bradford Ramsay, Lane E.B. Ruhland*, and *National Association of Regulatory Utility Commissioners,* Washington, D.C., and *Ruhland Law and Strategy,* Waunakee, for National Association of Regulatory Utility Commissioners.

**2022 WI 61**

NOTICE

**This opinion is subject to further editing and modification. The final version will appear in the bound volume of the official reports.**

Nos. 2021AP1321-LV & 2021AP1325
(L.C. No. 2019CV3418)

STATE OF WISCONSIN      :      IN SUPREME COURT

**County of Dane, County of Iowa, Town of Wyoming and Village of Montfort,**

        Petitioners-Respondents,

    v.

**Public Service Commission of Wisconsin,**

        Respondent-Respondent,

**Driftless Area Land Conservancy, Wisconsin Wildlife Federation, Chris Klopp, LeRoy Belken, Gloria Belken, S.O.U.L. of Wisconsin, Clean Energy Organizations, Dairyland Power Cooperation, I.T.C. Midwest, LLC, American Transmission Company, Midcontinent Independent System Operator, Inc. and WEC Energy Group Wisconsin,**

        Intervenors-Respondents,

**Michael Huebsch,**

        Other Party-Petitioner-Petitioner.

**FILED**

**JUL 7, 2022**

Sheila T. Reiff
Clerk of Supreme Court

---

**County of Dane, Iowa County, Town of Wyoming and Village of Montfort,**

        Petitioners-Respondents,

    v.

**Public Service Commission of Wisconsin,**

**Respondent-Respondent-Respondent,**

**Driftless Area Land Conservancy,**

   **Intervenor-Petitioner-Respondent,**

**Wisconsin Wildlife Federation, Chris Klopp,
LeRoy Belken, Gloria Belken, S.O.U.L.
Wisconsin, Clean Energy Organizations,
Dairyland Power Cooperative, ITC Midwest LLC,
American Transmission Company, LLC,
Midcontinent Independent System Operator, Inc.,
ATC, LLC and WEC Energy Group, Inc.,**

   **Intervenors-Respondents,**

**Michael Huebsch,**

   **Other Party-Appellant-Petitioner,**

**Robert M. Garvin,**

   **Other Party.**

---

ROGGENSACK, J., delivered the majority opinion of the Court with respect to ¶4, in which ZIEGLER, C.J., REBECCA GRASSL BRADLEY, and HAGEDORN, JJ., joined, and an opinion, in which ZIEGLER, C.J., REBECCA GRASSL BRADLEY, JJ., joined. HAGEDORN, J., filed a concurring opinion. KAROFSKY, J., filed a dissenting opinion, in which ANN WALSH BRADLEY and DALLET, JJ., joined.

---

  APPEAL from an order of the Circuit Court for Dane County. *Reversed*.

  ¶1 PATIENCE DRAKE ROGGENSACK, J. Dane County filed this Wis. Stat. ch. 227 (2019-20)[1] action in Dane County Circuit Court

---

  [1] All subsequent references to the Wisconsin Statutes are to the 2019-20 version unless otherwise indicated.

to contest the merits of the Public Service Commission's (PSC)[2] approval of the Cardinal-Hickory Creek Transmission Line. Driftless Area Land Conservancy and other Intervenors-Respondents (hereinafter Driftless) intervened[3] in the action that remains pending in Dane County Circuit Court. Therefore, the merits of the PSC's approval of Cardinal-Hickory are not addressed in this opinion.

¶2 We conclude that in pretrial decisions the circuit court erroneously interpreted Wis. Stat. § 227.57(1), which interpretation formed the basis for its expansion of the record created by the PSC and permitted discovery subpoenas of Michael Huebsch. We so conclude because Driftless failed, as a matter of law, to satisfy the statutory criteria, or due process requirements, necessary to expand the record created by the PSC during the Cardinal-Hickory proceedings.

¶3 In regard to the discovery subpoenas issued to Huebsch, we conclude that the circuit court erred when it denied Huebsch's motion to quash. The circuit court's error is grounded in its erroneous interpretation of Wis. Stat. § 227.57(1) wherein it approved discovery subpoenas.

¶4 Although four justices do not agree on how to address the procedural posture of this case, a majority of the court

---

[2] The PSC is a three-member Commission, which was composed of Rebecca Valcq, Ellen Nowak and Michael Huebsch when the Cardinal-Hickory line was approved.

[3] The Intervener-Respondents aligned with Driftless are the Wisconsin Wildlife Federation, S.O.U.L. of Wisconsin, LeRoy Belken, Gloria Belken and Chris Klopp.

3

agrees that the circuit court improperly denied Huebsch's motion to quash the discovery subpoena he received. Driftless' allegations of bias do not come close to the level of alleging a cognizable due process claim under Caperton v. A.T. Massey Coal Co., Inc., 556 U.S. 868, 884 (2009) and Miller v. Carroll, 2020 WI 56, ¶24, 392 Wis. 2d 49, 944 N.W.2d 542.

¶5 We further conclude that the circuit court did not clearly apply the correct legal standard when evaluating whether a due process violation had been stated; we reverse the circuit court's July 30, 2021 order denying Huebsch's motion to quash discovery subpoenas; and we conclude the circuit court erroneously denied Huebsch's request for a stay pending appeal. Accordingly, we reverse the circuit court.

I. BACKGROUND

¶6 This lawsuit, filed by Dane County, challenges the PSC's approval of construction of the Cardinal-Hickory line.[4] As the lawsuit moved forward and added intervening parties, Driftless sought to expand the record produced before the PSC pursuant to Wis. Stat. § 227.57(1) in order to produce grounds to overturn the merits of the Cardinal-Hickory decision.

¶7 The record of the proceedings reflects that Cardinal-Hickory enjoyed widespread support from labor, industry, business groups, environmentalists, Republicans and Democrats.

---

[4] The Cardinal-Hickory docket opened in April 2018 when American Transmission Company LLC, ITC Midwest LLC and Dairyland Power Cooperative petitioned the PSC for a certificate of public convenience and necessity (CPCN) for construction and operation of the transmission line.

4

Its proponents provided testimony that Cardinal-Hickory would improve energy reliability and create clean-energy infrastructure for Wisconsin by enabling greater usage of renewable energy sources across the Midwest.[5] More than 60 persons participated as parties in the proceedings, including Driftless.

¶8 The chairman of the Federal Energy Regulatory Commission (FERC) made strengthening interstate transmission a principal goal, which he presented to the PSC.[6] The PSC held highly technical fact-based hearings, supported by expert testimony, during June of 2019.

¶9 On August 20, 2019 in an open meeting, the PSC voted unanimously to grant the Certificate of Public Convenience and Necessity (CPCN) for construction of Cardinal-Hickory. On September 26, 2019, the PSC issued a 112 page written order finalizing CPCN approval.

¶10 After it lost before the PSC, Driftless moved to disqualify two of the three commissioners, alleging their participation created an unconstitutional "appearance of bias and lack of impartiality."[7] It alleged that Chairperson Rebecca

---

[5] Clean Grid Alliance, Fresh Energy, and Minnesota Center for Environmental Advocacy's Request to Intervene and Notice of Appearance, PSC REF# 353628 at 3 (Nov. 20, 2018), https://tinyurl.com/hc4xvy68.

[6] Energy Policy Institute, Revitalizing the Grid to Achieve a Clean-Powered Economy: A Conversation with FERC Chair Richard Glick (June 30, 2021) https://tinyurl.com/f2znuja8.

[7] PSC Order, September 26, 2019, 80.

5

Valcq's past work for We Energies "created an appearance of bias" and Michael Huebsch's work with a federal regulator, Midcontinent Independent System Operator (MISO), precluded his participation because he could have received ex parte communications about Cardinal-Hickory while at MISO events, again raising the "appearance of bias."

¶11 In its written decision approving construction of Cardinal-Hickory, the PSC unanimously rejected Driftless' bias claims because they were "not timely filed and did not comply with applicable legal standards."[8] The PSC explained that Huebsch was a PSC "Commissioner at the time of [Driftless'] intervention and it was publicly known that Commissioner Huebsch was the Commission's OMS representative," as was his work with MISO, which had been on-going for more than four years.[9] The PSC explained that "[i]t is clear that the information [Driftless] cited to support its Motion was available to it months (if not years) before the party hearing and the Commission's discussion of the record at the open meeting of August 20, 2019."[10]

¶12 The PSC noted that Driftless did not support its allegations with a verified affidavit based on personal knowledge of the facts alleged in its motion, nor did it name a single witness who would have such knowledge.[11] Accordingly, the

---

[8] Id., 81; see also Driftless Area Land Conservancy v. Valcq (Driftless II), 16 F.4th 508, 517 (7th Cir. 2021).

[9] PSC Order, September 26, 2019, 81.

[10] Id., 82.

[11] Id., 83.

PSC found that Driftless' motion "lacks a legitimate factual basis to support recusal or disqualification."[12] The order further explained, "There is a presumption of honesty and integrity in those serving as adjudicators in state administrative proceedings."[13] The PSC found that Valcq's and Huebsch's "participation complied with all applicable ethical and legal standards and [Driftless'] Motion lack[ed] any merit and [was] therefore denied."[14] Driftless did not appeal the factual findings or legal conclusions of the PSC decision.

¶13 Wisconsin Stat. § 227.57 challenges to PSC action usually are limited to contending that the evidence did not support the merits of the PSC's decision. However, here, Driftless mounted a sustained personal attack against Commissioner Huebsch in an effort to expand the PSC record through the use of § 227.57(1). In general statements, Driftless contended that at some point Huebsch could have done something that might appear to show bias in favor of Cardinal-Hickory, which Driftless asserts would violate the Due Process Clause of the Fourteenth Amendment and require vacation of approval of Cardinal-Hickory.[15]

---

[12] Id., 84.

[13] Id., 85 (citing State ex rel. DeLuca v. Common Council, 72 Wis. 2d 672, 684, 242 N.W.2d 689 (1976)).

[14] Id., 86.

[15] Driftless dropped its initial contention that Valcq's past work created "the appearance of bias" and proceeded solely against Huebsch.

7

¶14 The circuit court concluded that Driftless' general statements "presented enough information to allow discovery regarding whether Commissioner Huebsch acted impartially."[16] Driftless then subpoenaed Huebsch to sit for a deposition. It also subpoenaed his phone and phone password for Driftless' search of his communications. Huebsch moved to protect himself from Driftless' subpoenas.

¶15 Before the Dane County Circuit Court, where its Wis. Stat. § 227.57 action is pending, Driftless mounted a directionless search for "appearance of bias."[17] The circuit court has permitted Driftless to expand the record of the Cardinal-Hickory proceedings by concluding that an allegation of the "appearance of bias," if proved, was a due process violation sufficient to invalidate the PSC's decision. It also concluded that general "allegations" were all that were needed to satisfy § 227.57(1).[18] Many depositions were taken and thousands of pages of documents were produced.

¶16 Huebsch moved to quash the subpoenas in circuit court. The circuit court refused protection, saying that the difference between "serious risk of actual bias" and "appearance of bias" was just "semantics."[19] While acknowledging our recent decision

---

[16] Circuit Ct. Decision and Order, May 25, 2021, 1.

[17] There were occasions when Driftless also used the phrase "serious risk of actual bias"; however, as the circuit court repeated later, "appearance of bias" was the common phraseology.

[18] Circuit Ct. Decision and Order, May 25, 2021, 3.

[19] Circuit Ct. Mot. Hr'g Tr., July 30, 2021, 15. On August

in Miller v. Carroll[20] that employs serious risk of actual bias as the due process standard, the circuit court re-characterized the standard as the "'appearance' [of bias standard] because that really is what it is."[21]

¶17 Huebsch moved the court of appeals for interlocutory review and stay of the discovery subpoenas. The court of appeals granted interlocutory review and stayed the subpoenas while the court studied the legal issues presented. Driftless then withdrew its subpoenas and moved the court of appeals to dismiss, claiming the action was moot. Based on the withdrawal of the subpoenas, the court of appeals vacated its stay and the interlocutory review it had granted, concluding that the issue for which it had granted review was moot.[22]

¶18 Then, two business days after the court of appeals determined that the appeal was moot and vacated its interlocutory review, Driftless subpoenaed Huebsch to testify at trial. Although Huebsch did not move the circuit court to quash the subpoena for trial testimony, he sought an emergency

---

20, 2021, at Driftless' request, the circuit court vacated its order denying Huebsch's motion to quash: "IT IS HEREBY ORDERED that the order denying Michael Huebsch's motion to quash issued on August 3, 2021, Dkt. 422, and the August 5, 2021 order on phone protocol, Dkt. 432, are hereby VACATED."

[20] Miller v. Carroll, 2020 WI 56, 392 Wis. 2d 49, 944 N.W.2d 542.

[21] Id., 16.

[22] County of Dane v. PSC of Wis., No. 2021AP1321-LV, unpublished order at 5 (Wis. Ct. App. Aug. 20, 2021).

9

petition for supreme court review and stay of the proceedings in circuit court. We granted review and stayed further action in the circuit court, which included Huebsch's trial testimony.

## II. DISCUSSION

### A. Standard of Review

¶19 When the discovery subpoenas directed to Huebsch were withdrawn by Driftless, the court of appeals dismissed this matter as moot. County of Dane v. PSC of Wis., No. 2021AP1321-LV, unpublished order at 5 (Wis. Ct. App. Aug. 20, 2021). We independently review whether an issue is moot as a question of law. Tavern League of Wis., Inc. v. Palm, 2021 WI 33, ¶13, 396 Wis. 2d 434, 957 N.W.2d 261 (citing Portage Cnty. v. J.W.K., 2019 WI 54, ¶10, 386 Wis. 2d 672, 927 N.W.2d 509).

¶20 This matter arises in the context of a Wis. Stat. § 227.57 judicial review of the merits of the PSC's approval of Cardinal-Hickory. Generally, such reviews are confined to the record that was created before the agency. However, Driftless seeks to expand the record that was presented to the PSC during the Cardinal-Hickory proceedings. It does so pursuant to § 227.57(1) that permits record expansion due to "irregularities in procedure before the agency" . . . . "if proper cause is shown therefor."

¶21 As we review the discovery subpoenas issued to Huebsch after the circuit court determined that Driftless' general allegations of bias were sufficient to satisfy Wis. Stat. § 227.57(1) thereby permitting expansion of the PSC record through discovery, we also interpret § 227.57(1). We do so to

10

determine whether Driftless' non-specific allegations come within "irregularities in procedure" of the PSC for which "proper cause is shown therefor" as those terms are used in § 227.57(1). Driftless' contention and the circuit court's decision present questions of statutory interpretation and application that we independently review. Tavern League, 396 Wis. 2d 434, ¶13.

¶22 In addition, Driftless claims that the irregularity in the procedure was Huebsch's "appearance of bias" that denied it due process of law. Whether constitutional due process has been afforded in an administrative proceeding is a question of law that we independently review. Marder v. Bd. of Regents of the Univ. of Wis. Sys., 2005 WI 159, ¶19, 286 Wis. 2d 252, 706 N.W.2d 110 (citing State v. Sorenson, 2002 WI 78, ¶25, 254 Wis. 2d 54, 646 N.W.2d 354).

¶23 And finally, we review whether the circuit court erroneously exercised its discretion when it denied Huebsch's motion to quash the subpoenas for his deposition, his cell phone and cell phone password. Lane v. Sharp Packaging Sys., Inc., 2002 WI 28, ¶19, 251 Wis. 2d 68, 640 N.W.2d 788. Whether the circuit court applied the correct legal standard as it exercised its discretion is a question of law that we independently review. Id.

B. Mootness

¶24 "Mootness is a doctrine of judicial restraint." Marathon Cnty. v. D.K., 2020 WI 8, ¶19, 390 Wis. 2d 50, 937 N.W.2d 901. "An issue is moot when its resolution will have no

11

practical effect on the underlying controversy." J.W.K., 386 Wis. 2d 672, ¶11. Although we usually do not address issues that are moot, we have developed exceptions where we agree to review issues that may be moot when: "(1) 'the issues are of great public importance;' (2) 'the constitutionality of a statute is involved;' (3) the situation arises so often 'a definitive decision is essential to guide the trial courts;' (4) 'the issue is likely to arise again and should be resolved by the court to avoid uncertainty;' or (5) the issue is 'capable and likely of repetition and yet evades review.'" Id., ¶12.

¶25 We need not decide whether issues raised herein are moot because even if they were, exceptions to the mootness doctrine provide for our review. For example, the only conceivable basis for mootness here is Driftless' voluntarily withdrawing its July subpoenas through which it sought to expand the record created in the PSC proceedings.

¶26 An issue is likely to arise again and evade review when an actor voluntarily ceases challenged conduct but retains the power to resume that conduct. Friends of the Earth, Inc. v. Laidlaw Env't Servs., Inc., 528 U.S. 167, 189 (2000) (explaining that the obligation to persuade a court that the challenged conduct cannot reasonably be expected to start up again lies with the party asserting mootness). In the matter before us, not only did Driftless have the power to issue additional subpoenas to Huebsch, it did so in August, a few days after the court of appeals vacated its stay and withdrew the interlocutory

12

review it had granted. Accordingly, we choose to address the issues presented for our review.

### C. Wisconsin Stat. § 227.57 Review

#### 1. Statutory Interpretation

¶27 Dane County filed this case as a Wis. Stat. § 227.57 judicial review to test the merits of the PSC's approval of Cardinal-Hickory. A determination on the merits of that decision remains pending a hearing in Dane County Circuit Court. The scope of the Dane County judicial review will be "confined to the record" unless the criteria to expand the record set out in § 227.57(1) are met. Section 227.57(1) provides:

> The review shall be conducted by the court without a jury and shall be confined to the record, except that in cases of alleged irregularities in procedure before the agency, testimony thereon may be taken in the court and, if leave is granted to take such testimony, depositions and written interrogatories may be taken prior to the date set for hearing as provided in ch. 804 if proper cause is shown therefor.

§ 227.57(1).

¶28 It is important to note that our review focuses on allegations about Huebsch, which the circuit court has concluded are sufficient to satisfy Wis. Stat. § 227.57(1)'s criteria to expand the PSC record through discovery. Our review does not address the merits of the PSC's approval of Cardinal-Hickory.[23] Rather, we address Driftless' allegation, and the circuit

---

[23] Here, we conclude that Huebsch, as a subpoena recipient, can challenge whether a reasonable jurist would understand Driftless' allegations as raising a cognizable Caperton due process claim in the context of the attempt to expand the PSC record pursuant to Wis. Stat. § 227.57(1).

13

court's conclusion, that Huebsch's "appearance of bias" was an irregularity in the PSC procedure during the Cardinal-Hickory proceeding under the provisions of § 227.57(1). Stated otherwise, Driftless contends that the circuit court's statutory interpretation permits Driftless to expand the record created in the PSC proceedings.[24] Driftless asserts it can do so through testimony in court and by taking depositions and written interrogatories prior to the court hearing based on Huebsch's "appearance of bias" that impaired its right to due process during the PSC proceedings.

¶29 In order to assess the statutory argument Driftless makes, and on which the circuit court permitted discovery, we interpret Wis. Stat. § 227.57(1). We begin with the language of the statute. State ex rel. Kalal v. Cir. Ct. for Dane Cnty., 2004 WI 58, ¶45, 271 Wis. 2d 633, 681 N.W.2d 110. If the words are commonly used words without specific or technical definitions, we apply common definitions. Id. If words chosen are technical terms or specially defined, we apply definitions consistent with that legislative choice. Id. Context also is important to meaning, as is the structure of the statute itself. Id., ¶46.

¶30 In order to expand the record that was created before the PSC, a plain reading of Wis. Stat. § 227.57(1) requires that

---

[24] Driftless argued, "Petitioners propose to identify a set of specific, relevant documents that the parties can easily and quickly 'produce' again in state court. This approach is [grounded] in this Court's authority under Section 227.57(1)." R. 297 at 4.

14

Driftless first show "proper cause." "[I]f proper cause is shown" of an irregularity in procedure of the PSC, § 227.57(1) provides that the court may grant leave to take testimony in court and to take depositions and written interrogatories prior to the date set for a hearing on the merits of the agency decision. Although "proper cause" is not defined in the statute, § 227.57(1) nevertheless requires that the moving party provide evidence of procedural irregularities such that the circuit court may conclude that there is proper cause to grant leave to expand the PSC record.

¶31 In Marris v. City of Cedarburg, 176 Wis. 2d 14, 498 N.W.2d 842 (1993), we considered alleged bias of an administrative decision-maker. We held that a prima facie showing of wrongdoing by a decision-maker is necessary in order to evaluate a claim of bias in an administrative decision. Id. at 29-30. Alleged wrongdoing must be based on factual evidence. Id. As we explained, a prima facie showing of wrongdoing by a decision-maker requires specific statements of objective facts that are sufficient to show bias of the decision-maker. Id. at 24.

¶32 In Marris, neighbors challenged the continued legality of Marris's use of one of the buildings on her property for which she had been granted a nonconforming use. An administrative hearing was held to determine whether Marris's repairs of her property caused it to lose its legal nonconforming use.

15

¶33 After a decision contrary to Marris, she challenged a member of the review committee, alleging bias. Id. at 23. In our discussion, we detailed specific factual statements of the decision-maker that were necessary to making the prima facie case of wrongdoing. That is, we examined whether the chairperson's statements showed that he had prejudged whether Marris's repairs of her property were sufficient to cause loss of its legal nonconforming use.

¶34 As we explained, the chairperson's statements, which were part of the record of the committee's discussion, related to his characterization of the merits of Marris's claim. For example, "the chairperson referred to Marris's legal position as a 'loophole' in need of 'closing.'" Id. at 27. He expressed a desire "to 'get her [Marris] on the Leona Helmsley rule,'" id., and he questioned the claimant's credibility.[25] Id. at 27-28. We concluded that taken together his "statements overc[ame] the presumption of honesty and integrity that would ordinarily be applied." Id. at 29-30. We concluded that his statements "clearly indicated that he had prejudged Marris's case, thus creating an impermissibly high risk of bias" in his committee decision. Id. at 31. We then remanded the matter for a new hearing in which the chairperson could not participate. Id.

---

[25] In analyzing expenditures, he questioned how could the Board know "whether Marris 'bought a door for that building or for another building she built.'" Marris v. City of Cedarburg, 176 Wis. 2d 14, 28, 498 N.W.2d 842 (1993).

16

¶35 In a similar way, the court of appeals discussed the requirement that is necessary in order to expand a record created during common law certiorari review of an administrative proceeding when it considered irregularities in procedure in Sills v. Walworth Cnty. Land Mgmt. Comm'n, 2002 WI App. 111, 254 Wis. 2d 538, 648 N.W.2d 878.  Sills explained that when the allegation is bias of an administrative decision-maker, expansion of the record created by the agency requires a "prima facie showing of wrongdoing" by the decision-maker.  Id., ¶42.

¶36 It is important to note that general allegations about the adjudicator that were made in Sills were in sharp contrast with the specific statements made by the adjudicator in Marris. In Sills, the objectors alleged that a lobbyist retained by Peterson to garner public support for the Conditional Use Permit (CUP) application "may have had" ex parte communications with the adjudicating committee "which may have led to bias in the proceedings."  Id., ¶34.

¶37 In evaluating whether "help[ing] to gather public support" for the CUP was sufficient to open discovery, the court of appeals noted that nothing was presented to show the lobbyist "directly contacted Committee members."  Id., ¶43.  There also was no showing that "members were influenced by something more than the application of the evidence to the ordinance standards."  Id.  In concluding that general allegations were insufficient to open discovery and thereby permit expansion of the record, the court of appeals said:

17

> The sole and limited purpose for the requested discovery is to determine whether the lobbyist . . . contacted any Committee members . . . . This transparent attempt to use the discovery process as a fishing expedition to uncover evidence of bias is precluded by the presumption of honesty and integrity that we accord the Committee's decision.

Id.

¶38 As Sills explained, a prima facie showing cannot rest solely on general allegations. Sills denied the attempt to expand the record of the Committee proceedings because "an allegation of ex parte contacts without more is not sufficient to show the impermissibly high risk of bias that concerned the court in Marris." Id., ¶44.

¶39 We agree with the reasoning of Sills, and conclude that the phrase, "if proper cause is shown therefor," as it is employed in Wis. Stat. § 227.57(1), requires a prima facie showing of wrongdoing by an administrative decision-maker. We further conclude that "proper cause is shown therefor" by providing specific factual statements by the adjudicator that show wrongdoing, i.e., objective factual evidence of the adjudicator prejudging the merits of the matter before the committee. Id., ¶¶42, 43.

¶40 General allegations that the challenger characterizes as implying improper acts of an administrative decision-maker are insufficient. Id. Our interpretation also is consistent with Marris. There, we evaluated how to approach allegations of bias by a decision-maker. We did so by reviewing the decision-maker's specific factual statements that bore on the merits of the claim before the committee. Marris, 176 Wis. 2d at 24, 31.

18

¶41 Driftless has provided no factual statements by or to Huebsch on the merits of the Cardinal-Hickory line.[26] Its general allegations of concern are legally insufficient to permit expansion of the record created before the PSC pursuant to the requirements of Wis. Stat. § 227.57(1). The circuit court erred when it interpreted Driftless' general allegations as sufficient to satisfy § 227.57(1) and thereby permitted Driftless to employ discovery subpoenas.[27] The circuit court ignored the statutory phrase "if proper cause is shown therefore" stated in § 227.57(1), giving it no meaning at all. Accordingly, the circuit court erred in its interpretation of § 227.57(1). We now move to consider what due process requires.

### 2. Due Process

¶42 Due process applies to proceedings before administrative entities. Withrow v. Larkin, 421 U.S. 35, 46 (1975). A basic element of due process is the right to a fair hearing conducted before a fair tribunal. Miller, 392 Wis. 2d 49, ¶24; Marder, 286 Wis. 2d 252, ¶27.

¶43 In order to show a due process violation, the claimant must show a "serious risk of actual bias." Caperton, 556 U.S.

---

[26] Attorney Rachael Granneman, counsel for Driftless, provided a "Declaration" made after her review of meeting minutes and other documents created by various organizations. She adds her opinion of what those copied documents mean. None of the minutes and documents attached to her Declaration are based on her personal knowledge of what occurred at various meetings.

[27] Circuit Ct. Decision and Order, May 25, 2021, 3.

19

at 884; Miller, 392 Wis. 2d 49, ¶24. The burden of making that proof is on the party challenging the impartiality of the adjudicator. Marder, 286 Wis. 2d 252, ¶32 (relying on Withrow, 421 U.S. at 47).

¶44 In Marder, a tenured faculty member complained that ex parte contacts with members of the Board of Regents on the merits of his case must have occurred because of continuing interactions of Board members with others. Marder, 286 Wis. 2d 252, ¶2. Marder's claim of bias failed because:

> Marder has not presented any facts that would overcome the presumption that the chancellor and Marcovich acted appropriately when they traveled together. They were not prohibited from talking to one another and the legal presumption that administrative adjudicators are able to maintain their professional and ethical responsibility to remain impartial and to conduct themselves appropriately applies.

Id., ¶34.

¶45 As we explained in Marder while relying on the United States Supreme Court's discussion in Withrow, administrative decision-makers are entitled to the presumption of "honesty and integrity" when serving as adjudicators. Withrow, 421 U.S. at 47. As the concurrence carefully explained in Herrmann, "[I]t is not reasonable to question a judge's impartiality unless one can prove by objective evidence that actual bias or the probability of a serious risk of actual bias exists." State v. Herrmann, 2015 WI 84, ¶113, 364 Wis. 2d 336, 867 N.W.2d 772 (Ziegler, J., concurring). To overcome the presumption of honesty and integrity, the party asserting bias of an

20

administrative adjudicator must show a "serious risk of actual bias——based on objective and reasonable perceptions." <u>Caperton</u>, 556 U.S. at 884.

¶46 Before us, Driftless makes three types of general allegations on which it claims a due process violation: (1) Huebsch's activities with MISO provided opportunities for improper conversations; (2) Huebsch's life-time friendships with those who work in the provision or distribution of energy could have included improper conversations; and (3) Huebsch's application for employment by Dairyland Power Cooperative after he resigned from the PSC implies a connection between his decision in Cardinal-Hickory and future employment.

a. MISO

¶47 MISO is controlled by federal law. A brief review of MISO's functions and its support by state and federal statutes as a regional energy regulator will be helpful to our discussion.

¶48 More than ten years ago, Wisconsin decided to require certain utilities to join MISO. Wis. Stat. § 196.485(3m)(a)1.d.; §§ 196.485(2)(a) and (4)(a). MISO is the operator of the regional transmission system of which Wisconsin is a part.[28] It administers a FERC-approved tariff to which MISO must respond. Performing this task requires MISO to oversee

---

[28] MISO Region Engagement available at: https://www.misoenergy.org/stakeholder-engagement/miso-engagement.

21

various energy-related functions for which it needs input from state energy regulators, such as the PSC, on matters that affect bulk electric power systems. 18 C.F.R. § 35.34(k); see also Ill. Commerce Comm'n v. Fed. Energy Reg. Comm'n, 721 F.3d 764, 769-71 (7th Cir. 2013) (explaining background for MISO).

¶49 As FERC has explained, "We recognize that state utility regulators play an important and unique role in transmission planning processes, given that the states often have authority over transmission, permitting, siting, and construction, and that many state regulatory commissions require utilities to engage in integrated resource planning."[29] The FERC requires "[e]ach public utility transmission provider," including the PSC, "[t]o participate" in these "regional transmission planning process[es]."[30]

¶50 To assist in FERC's informational process, the PSC delegates authority to one of its commissioners to represent Wisconsin's interests at Organization of MISO States (OMS)[31] and before MISO. This delegation became a part of Huebsch's service as a commissioner on the PSC in 2015. Therefore, he was the PSC's delegate when he participated in the MISO and OMS

---

[29] FERC Order No. 1000-A, 139 FERC ¶ 61,132, ¶291 (May 17, 2012).

[30] Order No. 1000 Transmission Planning and Cost Allocation, https://tinyurl.com/x8k6uve5.

[31] OMS is separate from MISO. Huebsch was an OMS representative to the MISO Advisory Committee under the OMS Bylaws. See OMS, Organization of MISO States Bylaws at Articles V.3, X (revised Sept. 13, 2002).

22

activities of which Driftless complains. Huebsch's interactions
in regard to MISO and OMS were publically known long before the
proceedings on Cardinal-Hickory began.[32]

¶51 Driftless alleges that Huebsch's activities with MISO
and OMS support its allegation that he engaged in ex parte
communications that are prohibited under Wis. Stat.
§ 227.50(1)(a). Driftless makes this allegation without one
single example of Huebsch engaging in conversations with anyone
from MISO or OMS about the merits of the Cardinal-Hickory line.[33]

¶52 Ex parte communication on the merits of a contested
matter is the focus of Wis. Stat. § 227.50(1)(a). It regulates
ex parte communications on the merits as follows:

> [I]n a contested case, no ex parte communication
> relative to the merits or a threat or offer of reward
> shall be made, before a decision is rendered, to the
> hearing examiner or any other official or employee of
> the agency who is involved in the decision-making
> process, by any of the following:
>
> 1m. An official of the agency or any other
> public employee or official engaged in prosecution or
> advocacy in connection with the matter under
> consideration or a factually related matter . . . .
>
> 2. A party to the proceeding, or any person who
> directly or indirectly would have a substantial
> interest in the proposed agency action or an
> authorized representative or counsel.

§ 227.50(1)(a).

---

[32] PSC Order Sept. 26, 2019, 81.

[33] Huebsch did receive a communication regarding Cardinal-
Hickory, but it came from a member of another state regulatory
commission. Huebsch publically disclosed this communication, as
required by Wisconsin law.

23

¶53 According to Wis. Stat. § 227.50(1)(a), not all communications with those involved in the decision-making process are prohibited. Only those communications "relative to the merits" of a pending matter are proscribed. Driftless has identified no communications between Huebsch and MISO or OMS, or anyone else, relative to the merits of the Cardinal-Hickory line. Rather, Driftless implies there must have been such communications because of Huebsch's attendance at MISO and OMS events. General allegations such as Driftless asserts are legally insufficient to contravene the terms of § 227.50(1)(a) because they do not show a communication "relative to the merits" of the Cardinal-Hickory line.

¶54 In addition, Driftless does not recognize the necessary connections among MISO, OMS, FERC and the PSC. However, the required connections among the PSC, MISO, OMS and the FERC under state and federal statutes were apparent years before Driftless intervened in this action.[34] Huebsch's participation in MISO and OMS as the PSC's delegate also was publically available years before Driftless intervened in this action.[35] Given the public nature of this information, Driftless' general allegations about Huebsch's participation in MISO and OMS activities as somehow showing an appearance of bias borders on frivolous pleading.

---

[34] Id., 82.

[35] Id., 83.

24

¶55 Driftless also ignores the presumption of honesty and integrity that is accorded to decisions of administrative decision-makers. Sills, 254 Wis. 2d 538, ¶43; Withrow, 421 U.S. at 47. In order to overcome the presumption of honesty and integrity, Driftless was required to prove a "serious risk of actual bias——based on objective and reasonable perceptions." Caperton, 556 U.S. at 884. As we explained in Miller, "[t]o assess whether the probability of actual bias rises to the level of a due process violation, we apply, verbatim, the standard from Caperton. We ask whether there is 'a serious risk of actual bias——based on objective and reasonable perceptions.'" Miller, 392 Wis. 2d 49, ¶24.

¶56 Before us, Driftless ignores the foundational presumption of honesty and integrity of administrative decision-makers, and makes no showing of actual communications on the merits of Cardinal-Hickory that could evidence a serious risk of actual bias. Driftless had the burden of proof in its challenge to Huebsch's impartiality. Marder, 286 Wis. 2d 252, ¶24; Withrow, 421 U.S. at 47. Because it did not provide factual evidence of wrongdoing by Huebsch, it failed to meet that burden.

¶57 In regard to Wis. Stat. § 227.57(1), by which Driftless asserts its due process claim as an "irregularity in the procedure" before the PSC, judicial review under § 227.57(1) "shall be confined to the record." The record may be expanded only "if proper cause is shown" of an irregularity in procedure before the PSC. Therefore, the potential to expand the record

25

is conditional. We conclude that first, a prima facie showing that Huebsch engaged in wrongdoing must be made. Sills, 254 Wis. 2d 538, ¶42. Driftless has not identified one example of wrongdoing by Huebsch in regard to his interactions with MISO or OMS.

¶58 Accordingly, we conclude that Driftless' allegations in regard to Huebsch's activities with MISO and OMS are insufficient as a matter of law to pose a serious risk of actual bias, such that he was required to recuse himself from the Cardinal-Hickey proceedings based on a due process violation. Caperton, 556 U.S. at 884; Miller, 392 Wis. 2d 49, ¶22. They also are insufficient to support expanding the Cardinal-Hickory record created in proceedings before the PSC pursuant to Wis. Stat. § 227.57(1) because they show no factual evidence of wrongdoing by Huebsch.

### b. Friendships

¶59 Although Driftless argues to us that Huebsch's many friendships within the energy community could be a basis for bias, this contention was not made until briefing in this review. As with its allegation in regard to MISO, Driftless' allegations are general associational concerns for which it provides no factual incidents of communication about the merits of the Cardinal-Hickory line.

¶60 Caperton and Miller require that the decision-maker evidence a serious risk of actual bias before due process requires recusal. Caperton, 556 U.S. at 884; Miller, 392 Wis. 2d 49, ¶24. Without evidence of factual communications

26

that show wrongdoing by Huebsch, "proper cause" to expand the record under Wis. Stat. § 227.57(1) based on bias of a decision-maker does not exist. Accordingly, Driftless' general allegations of concern provide no basis from which we could conclude that there is a serious risk of actual bias that would require disqualification of Huebsch according to Caperton and our decision in Miller or that "proper cause has been shown" of wrongdoing by Huebsch according to § 227.57(1) based on personal friendships. We agree with the PSC that Driftless' allegation "lacks a legitimate factual basis to support recusal or disqualification."[36]

### c. Job Application[37]

¶61 Before us, Driftless implies that, because Huebsch applied for the position of CEO of Dairyland Power Cooperative months after he resigned from the PSC, there was some kind of a quid pro quo going on where Huebsch would approve Cardinal-Hickory and then be hired by Dairyland. Once again, there is absolutely no factual evidence to support this theory. This is simply another attempt by Driftless to create the view that Huebsch was biased, which is based on nothing factual except its aggressive litigation posture.

¶62 What the facts show is that after the PSC's September 26, 2019 decision on Cardinal-Hickory, Huebsch resigned. He had

---

[36] PSC Order, Sept. 26, 2019, 84.

[37] Once again, this concern was not presented until briefing.

27

served on the PSC since 2015. In January of 2020, the previous CEO of Dairyland Power, Barbara Nick, announced that she was retiring. On April 23, 2020, Huebsch submitted an application to a search firm for the position of Dairyland Power CEO. He was not hired; he did not get even an interview for the position.

¶63 Driftless provided no factual evidence that Huebsch presented a serious risk of actual bias in favor of approval of Cardinal-Hickory. There is no factual evidence of any wrongdoing by Huebsch. Unsubstantiated allegations are all that Driftless provided. Therefore, there is no "proper cause," as required under Wis. Stat. § 227.57(1), to expand the record created before the PSC on the Cardinal-Hickory line.

### D. Circuit Court Decision

¶64 Because the Wis. Stat. § 227.57 review of the merits of the PSC's approval of Cardinal-Hickory is pending in circuit court, this matter will return to the circuit court upon our remand. Accordingly, we address previous statements and decisions made by the circuit court relative to the PSC approval of Cardinal-Hickory.

### 1. Due process violation

¶65 In a written order, the circuit court declared "if Comm. Huebsch was improperly biased or his participation creates an improper appearance of bias, I must vacate the PSC decision and remand to the PSC for further proceedings."[38] In a

---

[38] Circuit Ct. Decision and Order, May 25, 2021, 9.

transcript of the motion hearing held July 30, 2021, the circuit court also said, "I'm going to call it 'appearance' because that really is what it is saying: When we can't say that there's actually bias, but there's such a high risk of bias that we're going to call it a due process violation anyway."[39] The circuit court may have recognized our decision in Miller, where we clearly stated that a due process violation requires a showing of the serious risk of actual bias based on objective factual representations. Miller, 392 Wis. 2d 49, ¶24. We conclude that although the circuit court may have understood the law, its repeated statements grounded in "the appearance of bias," when combined with the lack of factual evidence of communications to or from Huebsch on the merits of Cardinal-Hickory, are not sufficient to support a due process claim based on a "serious risk of actual bias." Stated otherwise, no serious risk of actual bias was shown here.

¶66 It was in part based on this error of what is required to state a due process violation that the circuit court interpreted Wis. Stat. § 227.57(1) as being satisfied by generalized allegations. As explained above, the circuit court interpreted § 227.57(1) as permitting expansion of the record, which resulted in the subpoenas to Huebsch among other discovery. In so concluding, the circuit court erred as a matter of law. Miller, 392 Wis. 2d 49, ¶24.

2. Subpoenas protection

---

[39] Circuit Ct. Mot. Hr'g Tr., July 30, 2021, 16.

¶67 We review the circuit court's decision that denied Huebsch's motion to quash Driftless' discovery subpoenas and its refusal to stay its discovery order. The purpose of all subpoenas was to obtain evidence that would permit Driftless to expand the record pursuant to Wis. Stat. § 227.57(1).

¶68 The discovery subpoenas are prohibited by our interpretation of Wis. Stat. § 227.57(1). They are not grounded in a legally cognizable due process claim. The circuit court refused the protection sought by Huebsch's motion to quash the discovery subpoenas. We review its order to determine whether the circuit court erroneously exercised its discretion. Lane, 251 Wis. 2d 68, ¶19. When doing so, we examine whether the circuit court applied the correct legal standard. Id.

¶69 For the reasons explained above relative to Driftless' allegations, the circuit court herein erroneously interpreted Wis. Stat. § 227.57(1) and it did not clearly apply the correct standard by which to measure whether a due process violation had been stated. It also refused to apply the standard we require when a circuit court is meeting a request for a stay of its order pending appeal. See Waity v. LaMahieu, 2022 WI 6, ¶50, 400 Wis. 2d 356, 969 N.W.2d 263.

¶70 As we have explained above in our interpretation of Wis. Stat. § 227.57(1), in order to expand the record created before the PSC, Driftless must show "proper cause" by prima facie proof of wrongdoing by Huebsch.[40] Such proof must be based

---

[40] Supra, ¶28.

30

on facts that show "irregularities in procedure" before the PSC in order to satisfy § 227.57(1).[41]   A prima facie showing requires objective facts; general allegations of concern are insufficient to satisfy the statutory possibility of expanding the record beyond that which was created before the PSC.[42]

¶71 Huebsch's application for employment with Dairyland Power was an event that concerned the circuit court.  The record shows that he submitted an application on April 23, 2020, months after he left the PSC.  This event was raised by the affidavit of Driftless' attorney alleging that his application evidenced "irregularities in procedure before the agency" pursuant to Wis. Stat. § 227.57(1).  The circuit court agreed and said:

> I do think there was a prima facie case made as it relates to Commissioner Huebsch and the way that it was demonstrated was through a variety of circumstances that started what I call immediately after the decision. . . .  What actions happened that were documented showing him exchanging communications with one of the owners involved in this decision, it looked like if not the very first, one of the earliest communications was talking about having a meeting with the head of that company, and then it went from there with another series of events that ultimately culminated in his applying for her job. . . .
>
> I'm saying that is enough to raise a reasonable question whether a commissioner, who was taking those kind of actions so quickly after rendering a decision, was truly acting impartial or if they had other considerations outside of the record in front of them on their mind when rendering the decision. . . .

---

[41] Supra, ¶29 (citing Marris, 176 Wis. 2d at 29-30).

[42] Supra, ¶36.

31

So enough has been shown to allow further exploration under [Wis. Stat. § ] 227.57(1) of exactly what happened with Commissioner Huebsch.[43]

¶72 The circuit court permitted discovery into whether Huebsch acted lawfully in his decision on Cardinal-Hickory by ignoring repetitive court decisions that uniformly hold that adjudicators in agency proceedings are presumed to act with honor and integrity. Marder, 286 Wis. 2d 252, ¶34; Withrow, 421 U.S. at 47. The circuit court did not acknowledge that presumption in the law.

¶73 Rather, instead of applying that longstanding presumption, the circuit court presumed that applying for employment with Dairyland Power after the Cardinal-Hickory proceedings had concluded created a prima facie showing sufficient to permit discovery of Huebsch's decision-making during the Cardinal-Hickory proceedings.[44]

¶74 As we explained above, Driftless had the burden of proving wrongful conduct through specific factual statements of Huebsch.[45] However, Driftless provided no specific factual statements by Huebsch and only general allegations about actions that occurred after the Cardinal-Hickory proceedings had concluded. These generalized concerns are insufficient to make a prima facie showing of "irregularities in procedure before the

---

[43] Circuit Ct. Oral Arg. Tr., Jan. 21, 2021, 77-79.

[44] Id.

[45] Supra, ¶38 (citing Marder v. Bd. of Regents of the Univ. of Wis. Sys., 2005 WI 159, ¶32, 286 Wis. 2d 252, 706 N.W.2d 110).

agency." Wis. Stat. § 227.57(1); see also Sills, 254 Wis. 2d 538, ¶¶42, 43. Stated otherwise, Driftless had the burden to show factual statements evidencing wrongdoing by Huebsch. Marder, 286 Wis. 2d 252, ¶24; Withrow, 421 U.S. at 47. However, in its ruling, the circuit court actually removed that burden of proof from Driftless. Instead, the circuit court authorized discovery by which Huebsch was questioned to determine if he could prove that he did not act unlawfully.

¶75 The circuit court erred in interpreting Wis. Stat. § 227.57(1) to permit discovery, thereby expanding the PSC record before § 227.57(1)'s requirement of proper cause was satisfied. The circuit court also did not apply the presumption of honesty and integrity to Huebsch's service on the PSC. It did so based largely on the affidavit of Driftless' attorney, who offered no factual statements to or from Huebsch that showed he had prejudged the merits of Cardinal-Hickory. The inference the circuit court accepted was that Huebsch's application for employment with Dairyland Power in April of 2020 could show that he had a pre-decision arrangement worked out with Dairyland Power.[46]

¶76 Furthermore, the presumption of honesty and integrity is consistent with the precise conditions the legislature established in Wis. Stat. § 227.57(1), that, when met, would permit expanding the record that was developed before the agency. As we explained above, "irregularities in procedure

---

[46] Circuit Ct. Decision and Order, May 25, 2021, 11.

before the agency" are permitted to be explored "if proper cause is shown therefor." § 227.57(1). Proper cause requires specific factual statements by the decision-maker on the merits of the matter being decided by the agency. Driftless presented not one example of objectively factual proof that the law requires; and the circuit court erred when it required none.

### 3. Stay pending appeal

¶77 After deciding against Huebsch on his motion to quash, the circuit court heard Huebsch's motion for a stay pending appeal. A circuit court's decision to grant or to deny a stay pending appeal is a discretionary decision. State v. Gudenschwager, 191 Wis. 2d 431, 439, 529 N.W.2d 225 (1995). A stay pending appeal should be granted where the moving party: "(1) makes a strong showing that it is likely to succeed on the merits of the appeal; (2) shows that, unless a stay is granted, it will suffer irreparable injury; (3) shows that no substantial harm will come to other interested parties; and (4) shows that a stay will do no harm to the public interest." Id. at 440.

¶78 Here, the circuit court listed the four Gudenschwager factors, but did not apply them. In regard to the first factor, the circuit relied on its prior decisions to conclude that there was "not a strong showing of likelihood to succeed on the merits. In fact, I disagreed with Mr. Huebsch as to the

34

arguments on the merits; so I can't find that that factor favors a stay pending appeal."[47]

¶79 The court concluded that because it had disagreed with Huebsch's position in the pending case, Huebsch had no likelihood of success on the merits when the matter proceeded on appeal. This is the same error we described in <u>Waity</u> where a stay was requested and the circuit court simply referred to its own legal reasoning earlier in the pending case as its decision on the motion for a stay. We held it was error to do so. <u>Waity</u>, 400 Wis. 2d 356, ¶52 (explaining that "a circuit court cannot simply input its own judgment on the merits of the case and conclude that a stay is not warranted.").

¶80 Here, the circuit court did not reexamine the legal issues presented and it did not consider the standard of review that the court of appeals would apply to its decisions on relevant legal issues. For example, it did not seem to understand that its interpretation of Wis. Stat. § 227.57(1) would be reviewed de novo by the court of appeals.

¶81 Its decision on the remaining <u>Gudenschwager</u> factors is equally deficient in applying the law to the facts presented. In regard to irreparable injury, the court said, "I simply don't see that here. I mean, there's certainly some burden that Mr. Huebsch is going to be put to because he's going to have to sit for a deposition . . . but that's not an irreparable

---

[47] Circuit Ct. Mot. Hr'g Tr., July 30, 2021, 63.

injury."[48]   The court went on, "If I grant this stay, I'm essentially handcuffing the petitioners from getting some of -- what may be some of the most relevant information for that hearing."[49]

¶82 The court did not consider whether the harm done by deposing an administrative decision-maker about the substance of his decision could be undone on appeal.  Yet, that is a type of irreparable injury that we gave as an example in Waity.  Waity, 400 Wis. 2d 356, ¶58.  We do not dwell on the circuit court's reasoning on the other Gudenschwager factors because application of the law relative to a stay pending appeal was completely absent from the circuit court's reasoning.  Not only did the circuit court err in subjecting Huebsch to discovery, it erred in not staying its decision pending appeal.

### III.  CONCLUSION

¶83 We conclude that in pretrial decisions the circuit court erroneously interpreted Wis. Stat. § 227.57(1), which interpretation formed the basis for its expansion of the record created by the PSC and permitted discovery subpoenas of Huebsch. We so conclude because Driftless failed, as a matter of law, to satisfy the statutory criteria or due process requirements necessary to expand the record created by the PSC during the Cardinal-Hickory proceedings.

---

[48] Id.

[49] Id., 65.

¶84 In regard to the discovery subpoenas issued to Huebsch, we conclude that the circuit court erred when it denied Huebsch's motion to quash. The circuit court's error is grounded in its erroneous interpretation of Wis. Stat. § 227.57(1) wherein it approved discovery subpoenas.

¶85 We further conclude that the circuit court did not clearly apply the correct legal standard when evaluating whether a due process violation had been stated; we reverse the circuit court's July 30, 2021 order denying Huebsch's motion to quash discovery subpoenas; and we conclude the circuit court erroneously denied Huebsch's request for a stay pending appeal. Accordingly, we reverse the circuit court.

*By the Court.*—The order of the circuit court is reversed.

¶86 BRIAN HAGEDORN, J. *(concurring).* I agree with much of the majority/lead opinion.[1] It methodically goes through the allegations against Michael Huebsch, former commissioner of the Public Service Commission (PSC), and demonstrates why they are meritless and borderline frivolous. It explains that generalized allegations of bias come nowhere close to the constitutional due process standard: actual bias or "a serious risk of actual bias." See Caperton v. A.T. Massey Coal Co., 556 U.S. 868, 884 (2009); Miller v. Carroll, 2020 WI 56, ¶24, 392 Wis. 2d 49, 944 N.W.2d 542.

¶87 Although I concur in the court's mandate, I arrive at substantially the same destination via a different route. The majority/lead opinion reverses the circuit court's decision not to quash a subpoena for documents, but it gets there by overturning a separate, months-earlier, unappealed decision from the circuit court to expand the agency record under Wis. Stat. § 227.57(1). I focus instead on the order appealed to us——the circuit court's decision not to quash a subpoena for documents under Wis. Stat. § 805.07(3). I agree with the majority/lead opinion that the allegations against Commissioner Huebsch do not support the circuit court's actions and the subpoena should have been quashed. It appears that the procedural paths taken in this writing and in the majority/lead opinion very likely will have the same practical effect for Commissioner Huebsch on remand. I write separately to explain my analysis and to stress why it was important for us to take this case.

---

[1] I join ¶4 of the majority/lead opinion.

1

I

¶88 While the majority/lead opinion correctly explains why Driftless' fishing expedition must be rejected, it is insufficiently attentive to the procedural posture of this appeal.[2] To be sure, this case is a procedural anomaly. The opinion centers its analysis on the circuit court's decision to expand the record under Wis. Stat. § 227.57(1). But Commissioner Huebsch, the petitioner here, was not a party to the case when that decision was made, and no party has sought leave to appeal that decision. See Wis. Stat. § (Rule) 809.62(1g)(a), (1m)(a)1. (noting that parties may petition for review of decisions that are adverse to the "party seeking review"). The opinion nonetheless analyzes § 227.57(1) and concludes the circuit court erroneously exercised its discretion in rendering a decision that is not before us. While § 227.57(1) is relevant to our inquiry, I do not believe it is appropriate to reach down and formally reverse this decision, even if the legal rationale proceeds on a parallel path.

¶89 Commissioner Huebsch recognized this in his briefing. He does not ask us to formally reverse the circuit court's decision under Wis. Stat. § 227.57(1), even as he attacks its reasoning which served as part of the circuit court's basis for denying the motion to quash. In his reply brief, Huebsch explained, "His interest in the soundness (or not) of the circuit court's earlier reasoning permitting discovery is merely

---

[2] "Driftless" here refers to Driftless Area Land Conservancy and the Wisconsin Wildlife Federation. Both parties issued the discovery subpoena which Commissioner Huebsch seeks to quash.

indirect and contingent."  Indeed, "it is not as if Huebsch somehow obtains a retroactive right to appeal the old orders." Huebsch's quarrel, he explained, formally "lies only with orders directed to him."  Therefore, even though I largely agree with the majority/lead opinion's critique of the circuit court, I do not join its procedural choice to overrule the decision to expand the record under § 227.57(1).

¶90 Only the circuit court's order denying Commissioner Huebsch's motion to quash the discovery subpoena is properly before us.  That order was vacated, and as the court of appeals identified, it is now moot.  However, long-established exceptions to the mootness doctrine exist for just such a time as this.  Among the relevant considerations, mootness may be overlooked if "the issue is of great public importance." Marathon County v. D.K., 2020 WI 8, ¶19, 390 Wis. 2d 50, 937 N.W.2d 901.  This case is.  The dissent disagrees.  It wonders what all the fuss is about, portraying this as a humdrum case getting suspicious and undeserved special treatment.  Not so. Imagine an ordinary civil case where, months after the decision, the losing litigant files a motion alleging a Caperton due process claim and asking for the private cell phone records of the judge——and a new judge ordered the records be produced. That would set an extraordinary precedent, worthy of close and careful scrutiny.  There would certainly be cause to look twice if the subpoena was rooted in mere speculation rather than firm evidence, especially given the exceptionally high standard needed to establish a Caperton due process claim.  Against this

backdrop, we would not think twice of applying a mootness exception.

¶91 A "that's not this case" argument doesn't work here because that is this case. The due process claim advanced turns on the same standard for adjudicatory bodies like the PSC as it does for courts. Withrow v. Larkin, 421 U.S. 35, 46-47 (1975) (applying judicial bias rules "to administrative agencies which adjudicate"). We have seen bias and recusal allegations increase greatly in recent years, turning the obligation of adjudicator impartiality into a litigation weapon. That only heightens the importance of these issues to the functioning of adjudicatory bodies like the PSC. The dissent's nonchalant view is misplaced. There is nothing ordinary about this case; it warrants our attention even though the order appealed from is moot.[3]

II

¶92 This leads us to the motion to quash. We review a motion to quash a subpoena for documents for an erroneous exercise of discretion. Lane v. Sharp Packaging Sys., Inc., 2002 WI 28, ¶¶19-20, 251 Wis. 2d 68, 640 N.W.2d 788. "A discretionary decision will be sustained if the circuit court

---

[3] Commissioner Huebsch also seeks review of the circuit court's decision to deny a motion for stay pending appeal. That issue is moot as well. But in my view, no mootness exception merits reaching that question. We granted Commissioner Huebsch's requested stay when we accepted this case, and we recently issued a decision clarifying the proper analysis. See Waity v. LeMahieu, 2022 WI 6, ¶¶48-54, 400 Wis. 2d 356, 969 N.W.2d 263.

4

has examined the relevant facts, applied a proper standard of law, and, using a demonstrated rational process, reached a conclusion that a reasonable judge could reach." Indus. Roofing Servs., Inc. v. Marquardt, 2007 WI 19, ¶41, 299 Wis. 2d 81, 726 N.W.2d 898 (quoting another source).

¶93 By statute, a circuit court may "quash or modify" a subpoena for documents if the subpoena "is unreasonable and oppressive." Wis. Stat. § 805.07(3); State v. Gilbert, 109 Wis. 2d 501, 509-10, 326 N.W.2d 744 (1982). And a subpoena, like any other discovery request, is limited to "any nonprivileged matter that is relevant to any party's claim or defense." Wis. Stat. § 804.01(2)(a). Here, the scope of review is even further limited. The proceeding before the circuit court is not a case in the normal course, but a review of an agency decision under Wis. Stat. ch. 227. Typically, such review is "confined to the record" created by the agency. Wis. Stat. § 227.57(1). However, "in cases of alleged irregularities in procedure before the agency . . . depositions and written interrogatories may be taken . . . if proper cause is shown therefor." Id. Driftless argues that its Caperton due process claim focused on Commissioner Huebsch constitutes an alleged irregularity in procedure.

¶94 Commissioner Huebsch does not disagree that a Caperton due process violation would constitute a procedural irregularity under Wis. Stat. § 227.57(1). Rather, he contends that Driftless failed to state an even remotely cognizable claim. I agree. As the majority/lead opinion explains well, the

5

generalized accusations, innuendo, and wholesale speculation underlying the bias claims come nowhere close to alleging a Caperton due process violation.  Accordingly, the records demanded by the subpoena——including Commissioner Huebsch's cellphone, his communications with a number of individuals both in the course of his work as a commissioner and in his private life, and documents about his decision to seek employment elsewhere——are not relevant.  And a subpoena demanding wholly irrelevant documents is unreasonable and oppressive.  See State v. Washington, 83 Wis. 2d 808, 844, 266 N.W.2d 597 (1978) (noting that whether a "subpoena may be attacked" turns in part on "the question of relevancy"); AF Holdings, LLC v. Does 1-1058, 752 F.3d 990 (D.C. Cir. 2014) ("If a subpoena compels disclosure of information that is not properly discoverable, then the burden it imposes, however slight, is necessarily undue:  why require a party to produce information the requesting party has no right to obtain?"); Compaq Comput. Corp. v. Packard Bell Elecs., Inc., 163 F.R.D. 329, 335-36 (N.D. Cal. 1995) ("Obviously, if the sought-after documents are not relevant nor calculated to lead to the discovery of admissible evidence, then any burden whatsoever imposed upon [the subpoenaed non-party] would be by definition 'undue.'").

¶95 Wisconsin law authorizes the quashing of unreasonable and oppressive subpoenas.  Wis. Stat. § 805.07(3) ("the court may . . . quash or modify the subpoena if it is unreasonable and oppressive").  As the majority/lead opinion details, it appears the circuit court applied a far more relaxed "appearance of

6

bias" standard rather than the strict, narrow, and rarely-met "serious risk of actual bias" standard that governs. This was the wrong legal test. I conclude that a reasonable judge examining the facts and applying the proper legal standards to both the motion to quash the subpoena and the underlying constitutional bias claim could only conclude that the subpoena for documents must be quashed.

¶96 As previously explained, the unusual procedural posture of this case means the subpoena for documents is the only issue we can or should formally decide. That said, the implications for further investigation regarding Driftless' alleged bias claim against Commissioner Huebsch as the proceedings continue below should be quite clear.

III

¶97 I close with some observations about the importance of this case for our system of adjudication. The constitutional standard underlying a Caperton due process claim is extraordinarily high. It is not whether some impartial observers would think there's an appearance of bias. The question is whether actual bias was present, or a serious risk of bias so extreme and unusual that it occurs only in only the rarest of circumstances. See Caperton, 556 U.S. at 887-88; id. at 899-900 (Roberts, C.J., dissenting). Any claim of bias "must overcome a presumption of honesty and integrity in those serving as adjudicators." Withrow, 421 U.S. at 47. Unfortunately, this "presumption that judges will follow the law

7

regardless of their personal views and regardless of their associations is quickly being replaced by the presumption that judges are frail, impressionable, and not to be trusted." Miller, 392 Wis. 2d 49, ¶126 (Hagedorn, J., dissenting).

¶98 While citizens have a right to expect judges and other adjudicators to decide cases impartially, this concern does not justify weaponizing bias allegations and recusal to achieve litigation ends. Legitimate claims have their place, but we cannot validate and routinize a litigation tactic that aims its fire at the decision-maker rather than the decision. Recusal and bias claims must not become another missile to be deployed anytime a litigant does not like an adjudicator's decision. Id. The constitutional due process guarantee announced in Caperton will rarely be met, and therefore should rarely be invoked. At the end of the day, the Constitution simply does not countenance the vague, generalized, and speculative accusations that served as the basis for Driftless' attacks against Commissioner Huebsch. The discovery subpoena against him should have been quashed. I respectfully concur.

¶99 JILL J. KAROFSKY, J. *(dissenting).* It is sometimes said that bad facts make bad law. Today, bad procedure makes bad law. Plain and simple, this appeal is moot. Nevertheless, four members of this court transform a "procedural anomaly"[1] into a procedural tragedy. These four Justices springboard off an appeal about mootness to overreach into matters not before this court. Strikingly, this unbounded exercise of judicial power comes with no explanation, leaving all to speculate as to why this case and this subpoena recipient receive such special treatment. Whatever the reason, my colleagues' indulgence in the excesses of judicial power is not grounded in law and serves only to deepen inequalities in our system of justice. For these reasons, I respectfully dissent.

## I. BACKGROUND

¶100 At the center of this interlocutory appeal is Michael Huebsch. During the relevant time frame, Huebsch served as Commissioner on the Public Service Commission (PSC) when that agency approved the Cardinal-Hickory Creek Transmission Line project. Several local governments and conservation organizations, including the Driftless Area Land Conservancy ("Driftless"), petitioned for judicial review of the PSC's approval decision.

¶101 Along with legal challenges to the merits of the PSC's approval, Driftless alleges Huebsch violated its members' due process rights. Driftless argues that Huebsch's contacts with

---

[1] See County of Dane v. PSC, Nos. 2021AP1321-LV, 2021AP1325 & 2021AP1495-W, unpublished order (Wis. Sept. 21, 2021) (Karofsky, J., dissenting).

1

organizations and persons who appeared before him during the PSC's consideration of the Cardinal-Hickory Creek project show at least a serious risk of actual bias. Evidence of those contacts, however, was not in the record created before the PSC. This absence is significant; typically, judicial review is limited to the agency record. The exception to that general rule is set forth in Wis. Stat. § 227.57(1), which allows for additional discovery in cases of "alleged irregularities in procedure before the agency," such as a biased adjudicator. Pursuant to that exception, the circuit court here determined that Driftless's allegations of bias met the "irregularities in procedure before the agency" standard and were, therefore, sufficient to grant Driftless leave to take additional discovery.

¶102 At the time the circuit court rendered its decision permitting extra-record discovery, Huebsch was not a party to the circuit court's review proceeding (he had since left his PSC Commissioner post for the private sector). He first became involved in that proceeding when Driftless subpoenaed him to be a non-party witness. The subpoena——a subpoena duces tecum—— sought both Huebsch's deposition testimony and his personal phone for "imaging" of data relevant to his potential bias. For ease of reference, I refer to this as the "Phone Subpoena."

¶103 Huebsch filed a motion to quash the Phone Subpoena and, alternatively, stay the Phone Subpoena pending appeal if the circuit court ruled against him. The circuit court denied both motions. Huebsch then appealed the circuit court's decisions to the court of appeals. While the appeal was

pending, Driftless withdrew the Phone Subpoena. The subpoena's withdrawal prompted the court of appeals to conclude that Huebsch's appeal of the now-defunct Phone Subpoena was moot. See County of Dane v. PSC, 2021AP1321-LV, unpublished order (Wis. Ct. App. Aug. 18, 2021).

¶104 Shortly thereafter, Driftless issued Huebsch a subpoena ad testificandum to secure his testimony at the upcoming trial scheduled to occur one month later. For simplicity, I refer to this later subpoena as the "Trial Subpoena." Upon receipt of the Trial Subpoena, rather than asking the circuit court to quash it, Huebsch came directly to this court. He presented us three options for resolving his qualms with the ongoing discovery efforts related to him. The first was the "extraordinary and drastic" request for a supervisory writ. See State ex rel. Kalal v. Cir. Ct. for Dane Cnty., 2004 WI 58, ¶17, 271 Wis. 2d 633, 681 N.W.2d 110. In the same petition, Huebsch alternatively asked that we exercise our similarly "extraordinary" superintending authority over the circuit court to micromanage its discovery decisions. See State v. Jerrell C.J., 2005 WI 105, ¶83, 283 Wis. 2d 145, 699 N.W.2d 110 (Abrahamson, C.J., concurring) (quoting State v. Helms, 136 Wis. 432, 464-65, 118 N.W. 158 (1908) (Winslow, C.J., concurring)). Finally, he filed a more traditional petition for review.

¶105 The petition for review challenged the court of appeals' decision that Huebsch's appeal over the Phone Subpoena was moot. In an apparent attempt to add a law-developing issue

to a petition otherwise seeking error correction,[2] Huebsch suggested that his case presented a good vehicle for integrating the "voluntary cessation" mootness exception recognized by federal courts into Wisconsin law. Behind that mootness question, however, were additional, purely "error correcting" issues. These include: (1) how a court is to apply the standard for a stay pending appeal——an issue for which we had already accepted review in a different case;[3] (2) the correct standard for adjudicator bias under the Due Process Clause of the Fourteenth Amendment——an issue that simply asked us to repeat the legal standard we had articulated only 14 months prior;[4] and (3) how Driftless's specific allegations fit within the settled "serious risk of actual bias" standard——issues calling for "merely the application of well-settled principles to the factual situation" stemming from the earlier (and never-appealed) order to expand the record.[5] A bare majority of this court granted Huebsch's petition for review over my dissent explaining how an interlocutory appeal over a decision declining to quash a subpoena presented a "procedural anomaly" for

---

[2] "The supreme court's primary function is that of law defining and law development," while the court of appeals' "primary function is error correcting." Cook v. Cook, 208 Wis. 2d 166, 188-89, 560 N.W.2d 246 (1997).

[3] That identical issue had already be accepted for review a month earlier. See Waity v. LeMahieu, No. 2021AP802, unpublished order (Wis. July 15, 2021).

[4] See Miller v. Carroll, 2020 WI 56, 392 Wis. 2d 49, 944 N.W.2d 542.

[5] Our review criteria, however, disfavor "merely the application of well-settled principles to the factual situation." Wis. Stat. § (Rule) 809.62(1r)(c)1.

4

addressing the more substantive adjudicator-bias standard. See County of Dane v. PSC, Nos. 2021AP1321-LV, 2021AP1325 & 2021AP1495-W, unpublished order (Wis. Sep. 21, 2021). We were unanimous, however, in denying Huebsch's two "extraordinary" requests for either a supervisory writ or an exercise of our superintending authority. Id.

## II. ANALYSIS

¶106 Four of my colleagues err in two fundamental respects. First, this case is moot and no mootness exception applies. That should be the end of this case. Unfortunately, it's not. The majority/lead and concurring opinions overreach into matters not properly before us in a manner that can only be characterized as an exercise of superintending authority——despite our unanimous decision not to exercise that authority in this case. That is the second error. I address each error in turn.

## A. This Case is Moot

¶107 Shortly after the court of appeals dismissed as moot the matter concerning the Phone Subpoena, Driftless served Huebsch with the Trial Subpoena. Huebsch claims the voluntary withdrawal of the Phone Subpoena followed by the issuance of the later Trial Subpoena proves his appeal should not have been dismissed. Huebsch posits this series of events falls within the "voluntary cessation" exception to mootness recognized under federal law but not under Wisconsin state law. The voluntary cessation mootness exception holds that when a party voluntarily ends challenged conduct, that cessation may not render a case

5

moot if the challenged conduct may be reasonably expected to recur following dismissal of the action. See Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc., 528 U.S. 167, 189 (2000).

¶108 While this "voluntary cessation" argument served as Huebsch's law-developing hook, neither the majority/lead opinion nor the concurrence develop the law. The majority/lead opinion mushes the distinct "voluntary cessation" exception into one of our existing mootness exceptions: capable and likely of repetition and yet evades review. See majority/lead op., ¶¶25-26. Regardless of which exception to mootness the majority/lead opinion is actually applying——voluntary cessation or capable and likely of repetition yet evades review——neither theory works here. That is because the conduct and legal issues here are not capable and likely of repetition; the two subpoenas materially differ.

¶109 The "capable and likely of repetition and yet evades review" mootness exception, as we recently emphasized, is "limited to situations involving 'a reasonable expectation that the same complaining party would be subjected to the same action again.'" Portage County v. J.W.K., 2019 WI 54, ¶30, 386 Wis. 2d 672, 927 N.W.2d 509 (quoting State ex rel. Clarke v. Carballo, 83 Wis. 2d 349, 357, 265 N.W.2d 285 (1978)). Likewise, the "voluntary cessation" exception applies only when an action "sufficiently similar" to the challenged conduct is reasonably expected to recur. See Ne. Fla. Chapter of Associated Gen. Contractors of Am. v. City of Jacksonville, 508 U.S. 656, 662 n.3 (1993).

6

¶110 Here, Huebsch supposes that the Phone Subpoena and the Trial Subpoena establish "repetition." But the two subpoenas differ substantially both as a matter of fact and as a matter of law. Factually, the subpoenas differ in scope. The Phone Subpoena would have permitted Driftless to probe relevant aspects of Huebsch's phone and required Huebsch to sit for a deposition. By contrast, the Trial Subpoena demands much less of Huebsch, requiring only that he appear at trial to offer truthful testimony.

¶111 As a matter of law, different legal standards govern quashing the two subpoenas. Our decision in State v. Gilbert, 109 Wis. 2d 501, 326 N.W.2d 744 (1982) delineates this legal distinction. Gilbert involved a ten-year-old girl who was served with a subpoena ad testificandum requiring her to appear in court and testify about her mother's abuse of her and her sister. The circuit court quashed the subpoena, reasoning that the child's best interest was better served by not appearing in the same courtroom as her abuser, which could trigger severe psychological harm and re-traumatize her. The defendant appealed. On appeal, the victim claimed the circuit court had the authority to quash her subpoena under Wis. Stat. § 805.07(3), which permits a court to quash or modify a subpoena "if it is unreasonable and oppressive."

¶112 This court reinstated the subpoena, concluding that § 805.07(3) applied only to a subpoena duces tecum; a subpoena ad testificandum, by contrast, could not be quashed on the grounds that it was unreasonable and oppressive or contrary to the child's best interest. Gilbert, 109 Wis. 2d at 508-17.

7

Though seemingly harsh, the court underscored just how fundamental a subpoena ad testificandum is to our legal system. It explained that "a fundamental tenet of our modern legal system[] is that the public has a right to every person's evidence," including the President of the United States. Id. at 505 (citing, e.g., United States v. Nixon, 418 U.S. 683 (1974)). The court highlighted the maxims that "each person has a duty to testify" and that the "integrity of the [adversarial] legal system depends on the court's ability to compel full disclosure of all relevant facts under the rules of evidence." Id. Thus, the court concluded a ten year old's physiological harm and re-traumatization was not enough for a court to quash a subpoena ad testificandum.

¶113 These factual and legal distinctions control the analysis. Huebsch's appeal challenged only the decision not to quash the Phone Subpoena──a subpoena duces tecum. On that issue, the legal standard was whether the subpoena was "unreasonable and oppressive." But under Gilbert, a different standard would apply to Huebsch's Trial Subpoena──a subpoena ad testificandum. These factual and legal differences means the two subpoenas are not the "same action" nor "sufficiently similar." See J.W.K., 386 Wis. 2d 672, ¶30; Ne. Fla. Chapter of Associated Gen. Contractors, 508 U.S. at 662 n.3.

¶114 These differences also mean the challenged Phone Subpoena is not reasonably likely to recur. See Laidlaw Env't Servs., 528 U.S. at 189. Driftless averred that it would not issue another subpoena duces tecum to Huebsch. The court of appeals relied on that averment, meaning Driftless is now

8

judicially estopped from serving Huebsch with another subpoena duces tecum. See State v. Ryan, 2012 WI 16, ¶¶32-33, 338 Wis. 2d 695, 809 N.W.2d 37. The majority/lead opinion's contrary assertion rests on a failure to appreciate the factual and legal differences between these two subpoenas. And because the Phone Subpoena and the Trial Subpoena are materially different, the cited mootness exceptions do not apply.

¶115 The concurrence takes a slightly different tack that fares no better. In the concurrence's view, the adjudicator-bias standard is an issue of "great public importance." Concurrence, ¶90 (quoting Marathon County v. D.K., 2020 WI 8, ¶19, 390 Wis. 2d 50, 937 N.W.2d 901). Perhaps, but this court recently published a comprehensive opinion setting out the proper adjudicator-bias standard making it unnecessary to revisit the issue here. See Miller v. Carroll, 2020 WI 56, 392 Wis. 2d 49, 944 N.W.2d 542.

¶116 Putting the issue's perceived importance aside, I fail to see why we needed to intervene through a moot interlocutory appeal. Had the trial been allowed to proceed without this court's meddling and had the final judgment deemed Huebsch unconstitutionally biased, then a traditional appeal would squarely raise the very same adjudicator-bias issue. The bottom line is that the adjudicator-bias issue serves as no excuse to overlook mootness in this interlocutory appeal. The appeal is moot without exception.

B. An Inappropriate Exercise of Superintending Authority

9

¶117 Four members of this court barrel past this appeal's mootness with analyses that can only be explained as expansive exercises of our superintending authority. To explain, even if this court could overlook mootness here, then the only discovery issue properly before us would be whether the circuit court erroneously exercised its discretion when it declined to quash the Phone Subpoena. In resolving that issue, the legal question we ask is whether the circuit court applied the "proper legal standard." See, e.g., State v. Dobbs, 2020 WI 64, ¶32, 392 Wis. 2d 505, 945 N.W.2d 609. The proper legal standard governing a subpoena such as the Phone Subpoena is the "unreasonable and oppressive" standard in Wis. Stat. § 805.07(3). See Gilbert, 109 Wis. 2d at 509-10. That would be the extent of our inquiry.

¶118 Not interested in limiting themselves to the Phone Subpoena and the narrow legal issue it raises, four of my colleagues instead exercise this court's extraordinary superintending authority to reach an issue not before this court, the adjudicator-bias standard. The adjudicator-bias issue arises solely out of the circuit court's decision to expand the record. But the decision to expand the record was never part of this appeal; the deadline to appeal that ruling expired before Huebsch filed this appeal. Tellingly, not even Huebsch was so bold as to ask that we reverse a decision that occurred before he was involved in the circuit court proceedings. See Opening Br. Pet'r at 51; Reply Br. Pet'r at 18. Undeterred, four member of this court micromanage the circuit court's application of the adjudicator-bias standard.

10

Because that issue belongs to the record-expansion decision not before us, such micromanagement is clearly an exercise of superintending authority.

¶119 Not willing to admit as much, both the majority/lead opinion and concurrence attempt to conceal their use of extraordinary power behind a novel legal theory that a subpoena must be grounded in a "cognizable" claim. But the veil is thin. Neither Huebsch nor my colleagues cite a single case from any jurisdiction that actually supports their theory. Indeed, the theory's novelty lays bare my colleagues' procedural mischief. Had this interlocutory appeal challenged the circuit court's decision to expand the record, I would agree that the issue before us is the "proper legal standard" for showing adjudicator bias under Wis. Stat. § 227.57(1). But again, that decision was not appealed. Huebsch instead appealed the later decision not to quash the Phone Subpoena. As such, this appeal presents only the issue of whether the circuit court applied the "proper legal standard" for showing a subpoena is "unreasonable and oppressive" under Wis. Stat. § 805.07(3). This novel "cognizable" claim theory conflates the adjudicator-bias issue, which is not before us, with the narrower Phone-Subpoena issue, which is the only matter before us. In short, this novel theory——found no where in the law——operates to obscure what is otherwise an exercise of superintending authority to reach matters not before the court.

¶120 In my colleagues' fervor to reach issues beyond this appeal's procedural posture, they fail to appreciate the dire consequences of the "cognizable" claim theory. This theory

11

allows a subpoenaed witness to raise what amounts to a motion to dismiss the claim underlying the subpoena. In allowing a subpoenaed witness to question the merits of the underlying claim, a majority of this court creates an entirely new class of persons within a case who now have the right to reach back to challenge earlier merits decisions on which their subpoenas are predicated. And if a circuit court does not amend its earlier merits decision, then this new class of subpoenaed witnesses can request an interlocutory appeal challenging that earlier decision's legal merits and demand that proceedings be stayed pending that appeal.[6] In the end, this novel "cognizable" claim theory provides for a disruptive new tool in a subpoena recipient's toolbox——at least for those select witnesses with the means to advance it.

¶121 Though four members of this court engage in a blatant exercise of superintending authority, they stay largely silent on why Huebsch's non-party appeal deserves such extraordinary treatment. That's problematic. Our superintending power "is not to be exercised upon light occasion, but only upon some grave exigency" and "extraordinary hardship." State v. Cir. Ct. of Milwaukee Cnty., 143 Wis. 282, 285, 127 N.W. 998 (1910). What's the "grave exigency"? Where's the "extraordinary hardship" here? Certainly it cannot be the mere fact that Huebsch would have to give truthful testimony about his conversations with friends and contacts who appeared as parties before him. Not even a ten-year-old abuse victim who faces

---

[6] Stunningly, Huebsch claims such an interlocutory appeal would be as of right for non-party witnesses like him.

12

psychological harm and re-traumatization by having to appear before her abuser to detail her abuse has received the extraordinary relief granted to Huebsch. See Gilbert, 109 Wis. 2d 501. Inconvenience and the discomfort that comes with having private relationships exposed to public view simply are not enough to excuse a subpoenaed witness from his "duty to testify." Id. at 505.

¶122 While the concurrence is more forthcoming with it's reasoning, it still falls prey to Huebsch's not-so-subtle scare tactic repeated throughout his filings and at oral argument that if this could happen to him, then it could happen to a Justice as well. True enough. But if our government is truly one of laws and not men and women, then we cannot use extraordinary constitutional powers to carve out special treatment for ourselves and only person's like us. Everyday Wisconsin citizens respect their civic duty and testify in court despite the hardships that testifying may bring. That remains true even when their subpoenas ultimately prove to be the result of legal error. Neither Huebsch nor any Justice of this court is absolved from this duty to testify. See Gilbert, 109 Wis. 2d at 505 (holding that "each person has a duty to testify" because the public's "right to every person's evidence . . . applies to all of us——even the President of the United States" (citing Nixon, 418 U.S. 683)). We are not above other witnesses and the procedures we adhere to should reflect that.

¶123 To that end, I conclude by observing that consistency across cases is integral to this court's institutional legitimacy. Like cases should be treated alike. Here, we are

13

left with a vexing question:  what distinguishes Huebsch from the ten-year-old abuse victim in Gilbert?  My colleagues offer no satisfying answer.

### III.  CONCLUSION

¶124 In this moot appeal, a bad procedural posture makes bad law.  Though we unanimously voted not to exercise superintending authority in this appeal, four members of this court make an about face by indulging in that extraordinary power to reach matters not before us.  My colleagues provide no acceptable principle or explanation for why this case called for such a blunt exercise of judicial power.  For these reasons, I respectfully dissent.

¶125 I am authorized to state that Justices ANN WALSH BRADLEY and REBECCA FRANK DALLET join this dissent.